# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEANNE HAMILL,** | : | CIV NO. 3:20-CV-231 |
| | : | |
| Plaintiff, | : | (Judge Mariani) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **TWIN CEDARS SENIOR LIVING, LLC, et al.,** | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM OPINION AND ORDER

### I.  Statement of Facts and of the Case

This case comes before the court for resolution of a discovery dispute regarding whether the plaintiff's medical records are properly subject to disclosure and inspection by counsel for the defendants. This is a wrongful death-survivor action brought by Jeanne Hamill, who alleges that her spouse, Eugene Hamill, died as a result of neglect and negligence by the defendants. Specifically, Mrs. Hamill alleges that the defendants put in motion a series of events which led to her spouse's death when they peremptorily discharged Mr. Hamill, an elderly man who suffered from multiple disabling medical conditions, from their facility without proper medical support and sent him unescorted on a one-way Uber trip to his family. Thus, the allegations in the complaint squarely place the question of Eugene Hamill's health, illness, and cause of death at issue in this litigation.

1

With the issues framed in this fashion, this case comes before us for consideration of a motion to quash subpoenas issued by the defendants and served upon various medical care givers who had treated Mr. Hamill. (Doc. 39). These subpoenas seek wide-ranging medical and mental health records for Mr. Hamill without any temporal limitation on the scope of the medical records production. For her part, the plaintiff cites relevance and overbreadth concerns, as well as considerations regarding the confidentiality of medical records, as grounds to quash these subpoenas.

Thus, in considering this motion to quash, we must reconcile litigants' discovery needs with the legitimate privacy concerns that the plaintiff may have in Mr. Hamill's medical records. Moreover, we must remain conscious of overbreadth concerns which may arise when the scope of a subpoena is not narrowly tailored to address the issues in the litigation. Upon consideration of the parties' positions, for the reasons set forth below, we find that the party issuing the subpoena has sufficiently established the relevance of this medical information, subject to some temporal limitations upon the scope of the subpoena and an *in camera* review of these records in accordance with case law. Smith v. Cent. Dauphin Sch. Dist., 1:05-CV-01003, 2007 WL 188569 (M.D. Pa. Jan. 22, 2007). We also believe that any concerns regarding confidentiality, relevance, and overbreadth that the parties

may have relating to the release of these documents can be resolved by the court through this *in camera* review.

## II. <u>Discussion</u>

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, the scope of what type of discovery may be compelled is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding motions to compel are "committed to the sound discretion of the district court." <u>DiGregorio v. First Rediscount Corp.</u>, 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of

the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than *de novo* standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "any nonprivileged matter that is relevant to any

4

party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26. Therefore, valid claims of relevance, privilege, and proportionality cabin and restrict the court's discretion in ruling on discovery issues. A party seeking discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

Furthermore, in the context of a request for access to a plaintiff's medical records, this court has previously defined the standards which control the evaluation of such discovery disputes. In this setting, we have repeatedly held that when a plaintiff puts his or her mental and emotional health at issue in a civil lawsuit the plaintiff implicitly waives the protection of the doctor-patient privilege with respect to his or her medical records. See, e.g., Smith v. Cent. Dauphin Sch. Dist., 1:05-CV-01003, 2007 WL 188569 (M.D. Pa. Jan. 22, 2007) (held, when a plaintiff puts her mental health at issue in a civil law suit, . . . she impliedly waives

5

the protection of the privilege); Sanchez v. U.S. Airways, Inc., 202 F.R.D. 131, 135 (E.D. Pa. 2001) (citing Sarko v. Penn-Del Directory Co., 170 F.R.D. 127, 130 (E.D. Pa. 1997) (holding that "a party waives the privilege by placing her mental condition at issue")); Topol v. Trustees of the Univ. of Pa., 160 F.R.D. 476, 477 (E.D. Pa. 1995) ("Having placed her mental state in issue, plaintiff waived any applicable psychotherapist-patient privilege."); Schoffstall v. Henderson, 223 F.3d 818, 823 (8th Cir. 2000) (same); Sidor v. Reno, No. 95 Civ. 9588 (KMW), 1998 WL 164823, at *2–3 (S.D.N.Y. April 7, 1998) (same); Kerman v. City of New York, No. 96 CIV. 7865 (LMM), 1997 WL 666261, at *3 (S.D.N.Y. Oct. 24, 1997) (same); Alden v. Time Warner, Inc., No. 94 CIV. 6109 (JFK), 1995 WL 679238, at *2 (S.D.N.Y. Nov. 14, 1995) (same).

Thus, while courts consistently hold that "[i]t would be unfair to allow Plaintiffs to unilaterally determine the amount of harm Defendant caused, without allowing the Defendant or the fact-finder to argue, consider and weigh other relevant factors of emotional stress," Sanchez v. U.S. Airways, Inc., 202 F.R.D. 131, 136 (E.D. Pa. 2001), it is also well "recognize[d] that [the] Plaintiff has a privacy interest in maintaining the confidentiality of her records of . . . health treatment." Smith v. Cent. Dauphin Sch. Dist., 1:05-CV-01003, 2007 WL 188569 (M.D. Pa. Jan. 22, 2007). Balancing these competing interests, in the exercise of their discretion, courts have required an *in camera* review of disputed treatment

records prior to their release. Smith v. Cent. Dauphin Sch. Dist., No. 1:05-CV-01003, 2007 WL 188569, at *3 (M.D. Pa. Jan. 22, 2007). Moreover to protect personal privacy we may also direct that medical "records at issue should be disclosed subject to a protective order, [requiring] Defendants [to] maintain confidentiality of the records by not disclosing any portion of the contents to anyone other than the court, the attorneys (and their staff) involved in the matter, and expert witnesses; by not releasing any portion of the records to third-parties; by destroying the records at the conclusion of the litigation . . . ; and by not using the information contained in the records for purposes other than prosecuting this lawsuit." Furey v. Wolfe, CIV.A. 10-1820, 2012 WL 877115 (E.D. Pa. Mar. 15, 2012).

> In addition, Rule 26's principles of:
>
> [P]roportionality [often] call for some further temporal limitations on the scope of this particular discovery, as well as topical limitations, pertaining to the matters at issue in this litigation. In the past, in the exercise of the court's discretion, courts have often set five year temporal limits on discovery. Miller v. Hygrade Food Prod. Corp., 89 F. Supp. 2d 643, 647 (E.D. Pa. 2000).

Grayson v. Dewitt, No. 1:15-CV-453, 2016 WL 5801699, at *6 (M.D. Pa. Oct. 5, 2016).

This is the approach that we will adopt in the instant case. Finding that the plaintiff's assertions put these medical matters at issue in this litigation, we

7

conclude that the subpoenas call for the production of relevant information and that, given the allegations made by the plaintiff, she has waived any broad sweeping claims of privilege. Nonetheless, we conclude that some temporal limitation on the production of these records beyond the 20-year time frame suggested by the defendants, (Doc. 50-11, at 12), is appropriate. The plaintiff's complaint indicates that Eugene Hamill became a resident at the defendants' facility on July 6, 2018. (Doc. 1, ¶ 21). He was allegedly discharged and sent home in an Uber on September 11, 2018 and he passed away on September 26, 2019. (Id. ¶¶ 23-29). Given these allegations, we believe that the disclosure of medical records from five years preceding Mr. Hamill's admission to the defendants' facility in July of 2013 through the date of Mr. Hamill's death in September of 2019, is fitting and proportional. Therefore, we will impose this temporal limit upon these subpoenas.[1]

We will then also prescribe a path for resolution of any specific, tailored privacy objections that the plaintiff may wish to make with regard to particular subpoenas. The plaintiff shall lodge any such specific objections to particular subpoena disclosures prior to the date set for the return of the subpoenaed documents, and the court will determine whether an *in camera* inspection of

---

[1] Of course, if upon review of these records the defendants can make a specific showing of need to obtain further medical information pre-dating July 2013, we would consider any such request.

8

particular records is necessary. Finally, to ensure that these medical records are treated with an appropriate degree of confidentiality, the parties will be directed to enter into a joint stipulated protective order governing the dissemination and use of this information.

    An appropriate order follows.

                                          *S/Martin C. Carlson*
                                          Martin C. Carlson
                                          United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEANNE HAMILL,** | : | CIV NO. 3:20-CV-231 |
| **Plaintiff,** | : | (Judge Mariani) |
| v. | : | (Magistrate Judge Carlson) |
| **TWIN CEDARS SENIOR LIVING, LLC, et al.,** | : | |
| **Defendants.** | : | |

## **ORDER**

AND NOW this 27th day of August 2020, in accordance with the accompanying memorandum, IT IS ORDERED that the plaintiff's motion to quash subpoenas (Doc. 39) is GRANTED, in part, and DENIED, in part, as follows:

**First**, the temporal scope of the subpoenas is confined to disclosure of medical records from July of 2013 through the date of Mr. Hamill's death in September of 2019.

**Second**, within that time frame, the subpoenaed parties shall produce the documents in their possession, custody, and control on or before **September 28, 2020**.

**Third**, if the plaintiff has a specific objection to any particular disclosures, and seek to have some individual records reviewed *in camera*, she shall file a request for *in camera* inspection identifying the particular records which she

believes warrant *in camera* review on or before **September 10, 2020**.

**Fourth**, in order to ensure that these medical records are treated with an appropriate degree of confidentiality, the parties shall meet and confer in order to enter into a joint stipulated protective order governing the dissemination and use of this information. If the parties are unable to agree upon the terms of a protective order they shall notify the court on or before **September 10, 2020**.

So ordered this 27th day of August, 2020.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge