IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEANNE HAMILL,** | : | **Civil No. 3:20-CV-231** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Mariani)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **TWIN CEDARS SENIOR LIVING** | : | |
| **CENTER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM AND ORDER

### I.    Statement of Facts and of the Case

This case comes before us for resolution of a discovery dispute and motion to quash subpoenas filed by Defendant Tamara Singer. With respect to this discovery dispute, the pertinent facts are as follows:

Jeanne Hamill brought this case against the defendants, alleging that the defendants are liable for the injuries to and subsequent death of her husband, Eugene Hamill, who was a resident of Twin Cedars Senior Living in 2018. The amended complaint alleged that Eugene Hamill became a resident of Twin Cedars on July 6, 2018. Mr. Hamill had several serious medical diagnoses, including hypertension, atrial fibrillation, and coronary artery disease, among others, and was required to wear a cardiac life vest. The complaint further alleged that on September 11, 2018, Twin Cedars made arrangements to discharge Mr. Hamill from the facility. These

1

arrangements allegedly included a three-hour Uber ride from Twin Cedars to Mr. Hamill's home in Toms River, New Jersey.

According to the plaintiff, Defendant Singer was responsible for these arrangements, and she was told it was an unsafe discharge plan. Nonetheless, Mr. Hamill was discharged on September 11, 2018 and an Uber took him to his residence in Toms River. During the trip to Toms River, Mr. Hamill began vomiting in the Uber and became unresponsive. He required an EMS transport to Barnabas Health Community Center where he was intubated, put on a ventilator, and placed in the Intensive Care Unit. Mr. Hamill suffered a stroke and a heart attack. Following treatment in the ICU, Mr. Hamill was transferred to a Skilled Nursing Facility, where he remained until he passed away just over a year later on September 26, 2019.

Given these factual averments, the plaintiff sought to amend the complaint to add claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1, et seq., and a claim that the defendants fraudulently transferred property and assets to avoid liability in violation of Pennsylvania's Uniform Fraud Transfer Act ("PUFTA"). 12 Pa. Cons. Stat. § 5104. (Doc. 94). In addition, the plaintiff sought injunctive relief, requesting that the court void the transfer of the assets and real property of Twin Cedars, an accounting of the proceeds of any sales or transfers, and that the proceeds from the transfer of Twin Cedars or sale of real property be held in escrow.

Upon consideration, we granted the plaintiff leave to amend this complaint, but denied the motion for preliminary injunction. However, while we declined to enjoin any property transfers, we did so without prejudice to the plaintiff attempting to develop evidence of a fraudulent transfer through discovery. Hamill has endeavored to comply with this instruction by serving subpoenas upon the IRS, the Pennsylvania Department of Revenue, and the Pennsylvania Department of Transportation that seek tax records and residency information relating to Defendant Singer from December of 2019 to the present. As Hamill has explained, this information is relevant to her fraudulent transfer of assets claim since: "The [defendants] have denied . . .  that Defendant Singer did not receive fair value, that she did not dissipate assets from the sale, nor that she continued occupancy of the property." (Doc. 135 at 3-4). According to Hamill the requested tax and residency records will shed light on the accuracy of these representations and the viability of any fraudulent transfer of assets claim.

Singer has moved to quash these subpoenas, arguing that the subpoenas are unduly sweeping in their scope, do not seek relevant evidence, and encroach upon confidential information. (Doc. 133). Singer therefore asks us to quash the subpoenas, or, in the alternative, enter a protective order directing that the subpoenaed documents be classified as confidential; only be used for purposes of this litigation; and not be filed with the court, or otherwise used publicly, unless

under seal. The parties have submitted briefs setting forth their respective positions regarding this motion. For her part, Hamill opposes quashing the subpoenas but would not oppose the entry of a protective order along the lines proposed by Defendant Singer. Therefore, this dispute is now ripe for resolution. Upon consideration of the parties' submissions, for the reasons set forth below, this motion will be granted in part and denied in part.

## II.  <u>Discussion</u>

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
> (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense

of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P., Rule 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Therefore, a court's decisions regarding the conduct of discovery, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). Likewise, discovery sanction decisions rest in the sound discretion of the court. Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 134 (3d Cir. 2009). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United

5

States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This broad discretion, however, is guided by certain general principles. At the outset, when considering a motion to quash or modify a subpoena we are enjoined to keep in mind that the reach of a subpoena is defined by the proper scope of discovery in civil litigation. As one court aptly observed:

Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure authorizes a court to quash or modify a subpoena that subjects a person to undue burden. Fed.R.Civ.P. 45(c)(3)(A)(iv), . . .; see Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enter., 160 F.R.D. 70, 72 (E.D. Pa. 1995)(Joyner, J.)(stating same). Accordingly, a court may quash or modify a subpoena if it finds that the movant has met the heavy burden of establishing that compliance with the subpoena would be "unreasonable and oppressive." Id. (citing Heat & Control, Inc. v. Hester Indus., 785 F.2d 1017, 1023 (Fed. Cir. 1986)). [However, when assessing a motion to quash we must also consider the fact that] Rule 26(b)(1) provides that discovery need not be confined to matters of admissible evidence but may encompass that which "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

Wright v. Montgomery County, No. 96-4597, 1998 WL 848107, *2 (E.D. Pa. Dec. 4, 1998). Thus, in ruling upon a motion to quash, "this court is required to apply the

6

balancing standards-relevance, need, confidentiality and harm. And even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 529 (D. Del. 2002). See R.D. v. Shohola Camp Ground & Resort, No. 3:16-CV-1056, 2017 WL 1550034, at *3 (M.D. Pa. May 1, 2017)

Further, in considering this discovery request, which seeks tax record information, we note that:

> The legal standards which govern disclosure of tax return information impose a twofold obligation on . . . parties. Thus, the question of " '[w]hether tax returns are discoverable turns on whether (1) the tax returns are relevant to the subject matter of the action; and (2) there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable.' (Doc. No. 86 at 6 (quoting Jackson v. Unisys, Inc., No. 08–3298, 2010 WL 10018, at *2 (E.D. Pa. Jan. 4, 2010)).)" Delhagen v. McDowell, No. 3:08 CV 00285, 2010 WL 5230910, at *2 (M.D. Pa. Dec. 16, 2010).

Sinclair Cattle Co. Inc. v. Ward, No. 1:14-CV-1144, 2015 WL 6167488, at *2 (M.D. Pa. Oct. 20, 2015). This two-part test for determining whether tax returns are subject to disclosure is also subject to shifting burdens of proof and persuasion. "First, the party seeking discovery bears the burden of demonstrating relevance. If relevant, the tax returns will be discoverable unless the party resisting discovery meets its burden of proving there is no compelling need for the tax returns because the information

available in the tax returns can be obtained from other sources." Fort Washington Res., Inc. v. Tannen, 153 F.R.D. 78, 80 (E.D. Pa. 1994).

Applying these legal benchmarks, we note that Hamill has made an initial showing of relevance in this case with respect to her fraudulent transfer claim, asserting that: "The [defendants] have denied . . . that Defendant Singer did not receive fair value, that she did not dissipate assets from the sale, nor that she continued occupancy of the property." (Doc. 135 at 3-4). We agree with Hamill that the requested tax and residency records may shed light on the accuracy of these representations and the viability of any fraudulent transfer of assets claim.[1]

Having found that Hamill has carried its initial burden of proving the relevance of some of these tax returns, we turn to the second issue we must address: whether "the party resisting discovery meets its burden of proving there is no compelling need for the tax returns because the information available in the tax returns can be obtained from other sources." Fort Washington Res., Inc. v. Tannen, 153 F.R.D. 78, 80 (E.D. Pa. 1994). In this case we find that Singer has not met this burden. Since Singer's arguments fall short of showing that there is no compelling

---

[1] We also disagree with Singer's assertion that our prior rulings foreclosed discovery in support of this claim. Quite the contrary, while we denied a preliminary injunction on these claims, we did so without prejudice to Hamill seeking discovery. Further, we disagree with Singer's characterization of the subpoenas scope. Contrary to Singer's assertions the temporal scope of the subpoenas is limited to the relevant time period which these asset transfers are alleged to have taken place.

8

need for these tax returns and do not persuasively demonstrate that the information available in the tax returns can be obtained from another source, the defendant has not carried her burden of proof on this issue which would justify quashing these subpoenas. We will, however, enter a protective order directing that the subpoenaed documents be classified as confidential; only be used for purposes of this litigation; and not be filed with the court, or otherwise used publicly, unless under seal.[2]

An appropriate order follows.

---

[2] It appears that Hamill does not object to the entry of such a protective order. (Doc. 135 at 5 n. 4).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEANNE HAMILL,** | : | **Civil No. 3:20-CV-231** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Mariani)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **TWIN CEDARS SENIOR LIVING** | : | |
| **CENTER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>ORDER</u>

AND NOW, this 30th day of June 2022, in accordance with the foregoing Memorandum, IT IS ORDERED that Defendant's Singer's Motion to Quash, (Doc. 133), is GRANTED in part, and DENIED, in part as follows: the motion to quash is DENIED but IT IS ORDERED that the motion for protective order is GRANTED and the subpoenaed documents will be classified as confidential; will only be used for purposes of this litigation; and will not be filed with the court, or otherwise used publicly, unless under seal.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge