## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEANNE M. HAMILL, | : | Civ. No. 3:20-CV-231 |
| Individually and as Administratrix and | : | |
| Administratrix ad Prosequendum of the | : | |
| Estate of Eugene Hamill, Deceased, | : | |
| | : | (Judge Mariani) |
| | : | |
| Plaintiff, | : | |
| | : | (Magistrate Judge Carlson) |
| v. | : | |
| | : | |
| TWIN CEDARS SENIOR LIVING, LLC,| : | |
| d/b/a and a/k/a Twin Cedars | : | |
| Senior Living, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

This case comes before us for consideration of a  motion for sanctions filed by the plaintiff. That motion seeks sanctions due to what the plaintiff alleges was a failure to adequately prepare a Rule 30(b)(6) deponent. (Doc. 224). This filing is the most recent in a series of mutual recriminations and sanctions motions which have been filed in the course of the somewhat contentious course of discovery in this lawsuit. The time and energy which the parties have devoted to these sanctions motions is regrettable, particularly when one considers the substantive issues at stake in this lawsuit which involve claims arising out of a fatality.

In this instant case, having carefully considered the parties' respective positions regarding this motion for sanctions, and having reviewed the deposition transcript at issue here, in the exercise of our discretion we will deny the motion for sanctions.

## II.  <u>Background</u>

Jeanne Hamill brought this case on behalf of her deceased husband on February 10, 2020, and filed an amended complaint on March 17, 2020, which is currently the operative pleading in this case. (Doc. 17). The amended complaint alleges that Eugene Hamill became a resident of Twin Cedars on July 6, 2018. (<u>Id.</u>, ¶ 20). Mr. Hamill had several serious medical diagnoses, including hypertension, atrial fibrillation, and coronary artery disease, among others, and was required to wear a cardiac life vest. (<u>Id.</u>, ¶ 21). The complaint further alleges that on September 11, 2018, Twin Cedars made arrangements to discharge Mr. Hamill from the facility. (<u>Id.</u>, ¶ 22). These arrangements allegedly included a three-hour Uber ride from Twin Cedars to Mr. Hamill's home in Toms River, New Jersey. (<u>Id.</u>, ¶ 23). The complaint further alleges that Defendant Singer was responsible for these arrangements, and that she was told it was an unsafe discharge plan. (<u>Id.</u>) Nonetheless, Mr. Hamill was discharged on September 11, 2018, and an Uber took him to his residence in Toms River.

During the trip to Toms River, Mr. Hamill began vomiting in the Uber and

became unresponsive, and he required an EMS transport to Barnabas Health Community Center where he was intubated, put on a ventilator, and placed in the Intensive Care Unit. (<u>Id.</u>, ¶¶ 25, 26). Mr. Hamill suffered a stroke and a heart attack. (<u>Id.</u>) Following treatment in the ICU, Mr. Hamill was transferred to a Skilled Nursing Facility, where he remained until he passed away just over a year later on September 26, 2019. (<u>Id.</u>, ¶ 28).

Jeanne Hamill then brought suit against the defendants, which include Tamara Singer, the owner-operator of the Twin Cedars Senior Living center, Twin Cedars Senior Living, LLC, and various defendants who played no direct role in the events alleged in the complaint subsequently acquired this facility from Singer—Little Walker Holdings, LLC, Shohola Realty, and Jacob Gutman. In this complaint, Hamill alleged claims of negligence, wrongful death, fraudulent transfer of assets, and a survival action against the defendants.

The parties have engaged in a protracted, and often contentious, course of discovery, which is exemplified by the most recent motion for sanctions filed by the plaintiff's counsel, who was previously sanctioned by this court for his own discovery defaults. This motion relates to the deposition of Tamara Singer, and seeks a sweeping panoply of sanctions due to what Hamill alleges was Ms. Singer's failure to be prepared as a Rule 30(b)(6) deponent. (Doc. 224). The defendants have responded to this motion. (Docs. 237, 238). Accordingly, this issue is ripe for

resolution.

With respect to this deposition, we find that the process by which the plaintiff pursued and conducted the deposition of Ms. Singer was somewhat confused and chaotic. As a result, there were a series of wholly avoidable misunderstandings and acrimony between the parties and counsel. No party is fully free of responsibility for the sad state of affairs in this deposition, but a dispassionate examination of the record reveals that nothing which transpired in the course of this deposition warrants sanctions.

This confusion began when the plaintiff issued a Rule 30(b)(6) notice to defense counsel and sought the deposition of Tamara Singer as a fact witness. The plaintiff's notice was somewhat ambiguous in that it appeared to seek a single witness, notwithstanding the fact that the various corporate defendants had no overlapping officers or employees.  For its part, Twin Cedars proffered Ms. Singer, who was also a fact witness, as its Rule 30(b)(6) deponent.  While counsel for Little Walker Holdings, LLC, Shohola Realty, and Jacob Gutman attempted to seek further clarification regarding the expectations of plaintiff's counsel, it appears that there was no meeting of the minds regarding whether Ms. Singer could serve as the Rule 30(b)(6) deponent of all parties. However, in hindsight it seems clear to the court that Ms. Singer could not perform this function for Little Walker Holdings, LLC, or Shohola Realty since she never worked for those entities. Regrettably, despite some

outreach efforts by defense counsel, this confusion remained unresolved until it burst forth in the course of Singer's deposition.

That deposition took place on July 13, 2023, via zoom technology. (Doc. 238-5). The deposition transcript is a protracted and occasionally painful read. It spans nearly eight hours commencing at 10:28 a.m. and concluding at 6:15 p.m. The deposition transcript includes 241 pages of testimony, coupled with countless testy exchanges between counsel.

Several factors combined to produce this dysfunctional deposition.

First, the transcript reveals the limitations of zoom as a medium for conducting a deposition, since on a number of occasions the parties experienced technical difficulties. These technical issues were then compounded by the interrogation style of plaintiff's counsel which was often aggressive, argumentative, quarrelsome, confusing, and objectionable. This form of questioning inspired numerous objections by defense counsel, and led plaintiff's counsel to object to the form of these objections on multiple occasions. The acrimony and arguments between counsel leaps off the page as one reads the transcript and left this transcript littered with notations of simultaneous conversations which could not be intelligibly transcribed. (Id.) Finally, it is apparent that the latent confusion between counsel regarding the scope of Ms. Singer's Rule 30(b)(6) testimony did not become clear to plaintiff's counsel until page 203 of this lengthy transcript when defense counsel

emphatically stated that Singer—who had never worked for Little Walker Holdings, LLC, or Shohola Realty—was not a corporate deponent for these entities. (Id. at 52-53). Despite this array of challenges, our review of the transcript leads us to conclude that Singer endeavored to answer the questions put to her to the best of her ability with the limited information which she had at hand.

It is against this factual backdrop that we consider the instant motion for sanctions.

## III.   **Discussion**

The guiding principles governing discovery sanctions are familiar and emphasize the court's broad discretion. Rulings regarding the proper scope of discovery are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Likewise, it is well settled that:

> The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court. National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam) ..... While this standard of review is deferential, a district court abuses its discretion in imposing sanctions when it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 538 (3d Cir. 2007).

This discretion is guided, however, by certain basic principles. For

example, Rule 37 of the Federal Rules of Civil Procedure provides that: "If a party....

fails to obey an order to provide or permit discovery, including an order under Rule

26(f), 35, or 37(a), the court where the action is pending may issue further just

orders," and specifies an array of available sanctions, which include preclusion of

evidence and striking of pleadings. Fed. R. Civ. P. 37(b)(2)(A). Yet, while a wide

array of potential  sanctions are available as a remedy for discovery violations, it is

also clear that:

> Courts in the Third Circuit should exercise particular restraint in
> considering motions to exclude evidence. See In re TMI Litig., 922 F.
> Supp. 997, 1003–04 (M.D. Pa. 1996); DiFlorio v. Nabisco Biscuit Co.,
> 1995 WL 710592 at *2 (E.D. Pa. Nov. 13, 1995) ("Unfortunately, the
> courts of this circuit are not free to exercise the full range
> of sanctions for discovery abuses authorized by the Rules."). The Third
> Circuit has, on several occasions, manifested a distinct aversion to the
> exclusion of important testimony absent evidence of extreme neglect or
> bad faith on the part of the proponent of the testimony. See In re Paoli
> R.R. Yard PCB Litig., 35 F.3d 717, 791–92 (3d Cir. 1994), cert. denied,
> 513 U.S. 1190, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995); Meyers v.
> Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905 (3d Cir.
> 1977), overruled on other grounds, Goodman v. Lukens, 777 F.2d 113
> (3d Cir. 1985), aff'd, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572
> (1987); Dudley v. South Jersey Metal, Inc., 555 F.2d 96, 99 (3d Cir.
> 1977). "[T]he exclusion of critical evidence is an 'extreme' sanction
> not normally to be imposed absent a showing of willful deception or
> 'flagrant disregard' of a court order...." Pennypack, 559 F.2d at 905
> (citation omitted).

ABB Air Preheater, Inc. v. Regenerative Envtl. Equip. Co., 167 F.R.D. 668, 671–72

(D.N.J. 1996). See Thompson v. Bridon-Am. Corp., No. 3:17-CV-40, 2018 WL

4616244, at *1–2 (M.D. Pa. Sept. 26, 2018).

In this case, the gravamen of Hamill's sanctions motion is her allegation that the defendants engaged in a sanctionable failure to adequately prepare Tamara Singer as a Rule 30(b)(6) deponent. The resolution of this question is guided by several familiar legal tenets.

First, it is well established that "when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), '[p]roducing an unprepared witness is tantamount to a failure to appear' that is sanctionable under Rule 37(d)." Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 304 (3d Cir. 2000). However, it is also clear that:

> Simply because defendant's witness could not answer every question posed to him does not equate to the fact that defendant did not satisfy its obligation to prepare its 30(b)(6) witness. See Reichhold, Inc. v. United States Metals Refining Company, et al., Civ. No. 03–453(DRD), 2007 WL 1428559, at *6–9 (D.N.J. May 10, 2007); Alexander v. Federal Bureau of Investigation, et al., 186 F.R.D. 137 (D.N.J.1998)(inability of defendant's designee to answer all questions did not warrant redesignation of new witnesses or sanctions); Wilson v. Lakner, 228 F.R.D. 524, 528–29 n. 7 (D.Md.2005)("[o]bviously a rule of reason applies. There is no obligation to produce witnesses who know every single fact, only those that are relevant and material to the incident or incidents that underlie the suit." Also stating, "absolute perfection in preparation is not required").

Costa v. Cnty. of Burlington, 254 F.R.D. 187, 190 (D.N.J. 2008)

Instead, a finding of bad faith is often a necessary element of a sanctions motion in this setting. Therefore, in the absence of some showing of bad faith incorrect statements by a Rule 30(b)(6) deponent or a deficiency in the deponent's

testimony on some subject will not amount to a complete failure to appear that would justify sanctions. <u>Bistrian v. Levi</u>, 448 F. Supp. 3d 454, 496 (E.D. Pa. 2020).

Having reviewed the transcript of this deposition we can make no such findings which would warrant sanctions here. In this case it is evident that the parties were laboring under a mutual misunderstanding regarding the scope and nature of Ms. Singer's testimony. In this regard, Little Walker and Shohola were well justified in their assumption that Singer—who was never their employee—would not serve as a Rule 30(b)(6) deponent for these parties. The misapprehensions of plaintiff's counsel on this score, therefore, do not rise to the level of sanctionable misconduct. Furthermore, while no party should take particular pride in the conduct of this deposition, we find that the deponent endeavored to the best of her ability to navigate the erratic course set by counsel and fairly respond to the questions posed to her. Therefore, finding that there was no bad faith failure to respond on the part of this witness, but concluding that mutual confusion and misunderstandings led to this dysfunctional deposition, we will deny this motion for sanctions.

However, we close with one final observation for the benefit of counsel. Litigation sometimes produces more heat and smoke than light. The role of counsel is to illuminate disputes, not compound controversies. To achieve this goal, in the future we commend to all counsel the virtues of courtesy, collegiality, civility, and clear, concise communication.

An appropriate order follows.

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED: September 19, 2023

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEANNE M. HAMILL,** | : | **Civ. No. 3:20-CV-231** |
| **Individually and as Administratrix and** | : | |
| **Administratrix ad Prosequendum of the** | : | |
| **Estate of Eugene Hamill, Deceased,** | : | |
| | : | **(Judge Mariani)** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **TWIN CEDARS SENIOR LIVING, LLC,** | : | |
| **d/b/a and a/k/a Twin Cedars** | : | |
| **Senior Living, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

AND NOW, this 19th day of September 2023, in accordance with the accompanying Memorandum Opinion, IT IS ORDERED that the plaintiff's motion for sanctions, (Doc. 224) is DENIED.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge