## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JEANNE HAMILL, Individually, and,
as, Administratrix, *ad prosequendum* for
the ESTATE OF EUGENE HAMILL,

             Plaintiffs,

    v.

TWIN CEDARS SENIOR LIVING,
LLC, and TAMARA SINGER, *et al.*,

             Defendants.

Civ. No. 3:20-cv-00231-RDM-MCC

## DEFENDANT TAMARA SINGER'S MOTION FOR SANCTIONS UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE

**AND NOW,** pursuant to Rule 11(c) of the Federal Rules of Civil Procedure, Defendant Tamara B. Singer ("Singer"), by and through her undersigned counsel, respectfully renews her motion (i) to dismiss with prejudice Count VIII of Plaintiff's Second Amended Complaint; and (ii) to impose appropriate sanctions upon Plaintiff and/or Plaintiff's counsel, Timothy J. McIlwain, Esq. ("Attorney McIlwain"), for patent, flagrant and continuous violations of Rule 11(b). *See* Fed. R. Civ. P. 11(b) & (c). On November 9, 2022, Magistrate Judge Carlson denied without prejudice Defendant Singer's prior attempt to pursue remedies under Rule 11 "as premature" – to be re-filed subsequently at a more appropriate juncture. *See* ECF No. 181 at p. 2. The appropriate time is now. Attorney McIlwain and his client have chosen to litigate a claim against Defendant Singer that is – and has always been – wholly devoid of merit and entirely

1

lacking in evidentiary support. Consequences should be imposed for their wanton disregard for the obligations set forth under Rule 11.

One Court of Appeals observed, "[t]he day is past when our notice pleading practice . . . [and] liberal discovery rules invited the federal practitioner to file suit first and find out later whether he had a case or not." *Hale v. Harney*, 786 F.2d 688, 692 (5th Cir. 1986). Instead, Rule 11 of the Federal Rules of Civil Procedure "imposes on counsel a duty to look before leaping[.]" *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986). When counsel places his signature on a filing in federal court, he "certif[ies] that there is a reasonable basis in fact and law for the claims [and the arguments]" contained in his papers. *See Keister v. PPL Corp.*, 318 F.R.D. 247, 262 (M.D. Pa. 2015) (citation omitted). This certification requires that counsel make a "reasonable inquiry" to ensure his filing complies with this standard. *See* Fed. R. Civ. P. 11(b). "Rule 11 requires lawyers to think first and file later, on pain of personal liability." *Stewart v. RCA Corp.*, 790 F.2d 624, 633 (7th Cir. 1986).

Throughout this case, Plaintiff's counsel, Attorney McIlwain, has repeatedly chosen not to heed the warning from the Third Circuit to "stop, look, and listen" before pursing a claim in federal court devoid of any foundation in law or fact. *Lieb*, 788 F.2d at 157. He **did not** " 'Stop, Think, Investigate and Research' before filing papers[,]" *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987), advancing patently frivolous allegations that Defendant Singer violated the Pennsylvania Uniform Voidable Transactions Act ("PUVTA"), 12 Pa. C.S.A. §§ 5101, *et seq.*, when she sold her business

2

in an arms-length deal.  He continued to pursue this claim against Defendant Singer well beyond the threshold where *any* reasonable attorney would consider justified in doing so.  Rule 11 demands consequences for this conduct.

On June 15, 2021, Attorney McIlwain sought leave to amend Plaintiff's Complaint for a second time to add, *inter alia*, Count VIII based upon allegations that Defendant Singer, sold her business "with actual intent to hinder, delay or defraud" Plaintiff as a future creditor.  Dkt. No. 75-3 (Plaintiff's Memo. in Support of Motion to Amend, 6/15/21, at 3-4) (citing 12 Pa. C.S.A. § 5104(a)(1) & (b)); *See* Dkt. No. 109 (Second Amended Complaint, 12/13/21, at Count VIII, ¶¶ 83-86, 1-9).  He employed these "patently unmeritorious [and] frivolous" allegations to multiply the litigation before this Court and to increase the defense costs exponentially for Singer.  *See Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988).  And, to this end, Attorney McIlwain succeeded.

Attorney McIlwain simultaneously pursued a Motion for Preliminary Injunctive Relief based upon (1) Plaintiff's PUVTA claim and (2) the allegations that Singer engaged in a voidable transaction designed to hide and dissipate her assets. Dkt. No. 76 (Plaintiff's Motion for Prelim. Inj., 6/15/2021, at p. 3-4, ¶¶ 1-6).  This Court denied Plaintiff's preliminary injunction, but the underlying allegations survived and continued to persist as a cause of action in the Second Amended Complaint.  Since its inception, Plaintiff and Attorney McIlwain have used the PUVTA claim "to harass, cause unnecessary delay, [and] needlessly increase the cost of litigation" for Defendant Singer.

*See* Fed. R. Civ. P. 11(b)(1). Plaintiff and Attorney McIlwain forced Defendant Singer (i) to respond to subpoenas for financial information; (ii) to endure aimless and combative deposition questioning that sought to pry into a valid arms-length transaction entirely unrelated to the allegations concerning the Decedent; and (iii) to move for summary judgment against a frivolous claim that lacks the factual averments sufficient to survive a Rule 12 motion, as this Court recently determined.

From the beginning, Attorney McIlwain knew – or, with "reasonable inquiry," should have known – that Plaintiff's PUVTA claim and all accompanying factual allegations are "frivolous, legally unreasonable, [and] without factual foundation[.]" *Lieb*, 788 F.2d at 157 (citation omitted). Specifically, Plaintiff had no factual basis to conclude that Singer violated § 5104 of the PUVTA when she sold her business to Little Walker Holdings, LLC ("Little Walker") and it principals. No facts *ever* indicated, *inter alia*, (a) that the transaction occurred for less than adequate consideration; (b) that Singer or Twin Cedars Senior Living, LLC ("Twin Cedars") were left insolvent following the sale; (c) that Singer held any ownership interest in any entity that purchased her business; or (d) that Singer attempted to conceal the transaction or abscond with the proceeds. *See* 12 Pa. C.S.A. § 5104.

Both this Court – and former Magistrate Judge Carlson – have reached these same conclusions in disposing of Count VIII as it relates to Little Walker Defendants. On March 14, 2024, this Court adopted the Report and Recommendation of Magistrate Judge Carlson (Dkt. No. 155) and dismissed Count VIII of the Second Amended

Complaint against Little Walker Holding, LLC, Shohola Realty, LLC, Jacob Gutman and Gary Rohinsky (collectively, "Little Walker Defendants"). This Court agreed with Judge Carlson's conclusions that, *inter alia*, the PUTVA claim at Count VIII failed to offer sufficient allegations to state a cause of action. *See* Dkt. No. 257 (Memorandum Opinion, 3/14/24, at 7).

> [W]e conclude that Hamill's second amended complaint has not met Rule 9's particularity requirement with respect to these fraud allegations. Indeed, Count VIII of **the second amended complaint does not even directly assert that the defendants acted with fraudulent intent.** Further, many of §5104(b)'s "badges of fraud" seem to have no application here since **there are no allegations that this was an illicit insider transaction, involving highly suspicious timing or extensive evidence of flight and concealment.** Quite the contrary, it is evident from Hamill's pleadings that the plaintiff was aware of Little Walker's acquisition of Twin Cedars from the inception of this litigation since Hamill alluded to this fact in her initial complaint filed in February of 2020. (Doc. 1, ¶¶ 35, 36).

Dkt. No. 155 at 19 (emphasis added). Yet, after more than two (2) years of litigation, Count VIII remains pending against Defendant Singer – even though Plaintiff and Attorney McIlwain have been unable to find *any* proof that establishes the scant allegations contained in the Second Amended Complaint.

The foregoing facts were readily apparent from "the circumstances that existed at the time [Plaintiff's] counsel filed the[se] challenged paper[s]." *Pensiero*, 847 F.2d at 95. Nonetheless, Attorney McIlwain and his client *filed first* and relegated "[t]hink[ing], [i]nvestigat[ing] and [r]esearch[ing]" for a subsequent date. *See Gaiardo*, 835 F.2d at 482; *Stewart*, 790 F.2d at 633. The transaction documents for the sale of Defendant Singer's

business reveal that Plaintiff's allegations underpinning Count VIII are patently untrue. Attorney McIlwain had many, if not all, of these documents at his disposal before he chose (i) to file the PUVTA claim and (ii) to request that this Court impose a preliminary injunction freezing Singer's assets. Yet Attorney McIlwain and his client pressed onward, undeterred by the facts available to them.

Plaintiff and Attorney McIlwain, therefore, violated Rule 11 and must be held accountable and sanctioned for their litigation abuses. This case presents the "exceptional circumstance" where Plaintiff's counsel pursued a patently frivolous claim, entirely lacking in factual or evidentiary support, for the apparent purpose of increasing Defendant Singer's costs to force a settlement. *See Ario v. Underwriting Members of Syndicate 53*, 618 F.3d 277, 297 (3d Cir.2010) (quoting *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.1988)). In support of this Motion, Defendant Singer avers the following:

1.      Plaintiff, Jean M. Hamill, in her individual capacity and as the administratrix of the Estate of Eugene Hamill ("Plaintiff" or "Hamill"), initiated this lawsuit on February 10, 2020, by filing a complaint in U.S. District Court for the Middle District of Pennsylvania. *See* Dkt. No. 1 (Original Compl., 2/10/2020).

2.      The Original Complaint involved claims of negligence against Defendants Twin Cedars Senior Living, LLC ("Twin Cedars") and Tamara Singer, which allegedly resulted in the death of Eugene Hamill ("Decedent") more than one (1) year after he

had been discharged from the facility.  *Id.*

3.    Specifically, Plaintiff asserted causes of action for negligence, for wrongful death and for violations of the Survival Act.

4.    Plaintiff then filed her first amended complaint ("First Amended Complaint") on March 17, 2020, to which Singer and Twin Cedars promptly responded with an Answer, Affirmative Defenses and Cross-claims. *See* Dkt. No. 17 (Am. Compl., 3/17/2020); Dkt. No. 20 (Answer, 4/27/2020).

5.    Plaintiff attempted to allege successor liability against Little Walker Holding, LLC for negligence, wrongful death, and Survivor's Act violations.  Dkt. No. 17 at ¶¶ 34, 78-101 (included at Counts VII, VIII and IX, respectively).

6.    On August 15, 2019, Singer had executed a Letter of Intent ("LOI") with the principals of Little Walker, Jacob Guttman and Gary Rohinsky (collectively, "Little Walker Defendants"), for the sale of the Twin Cedars business.  *See* Dkt. No. 86-1 (Singer Decl. at ¶18); Ex. 1 (LOI, 8/15/2019).  The final sale closed on January 2, 2020. *Id.* at ¶24.

7.    Defendant Singer received Attorney McIlwain's $15 million demand letter on September 5, 2019, after she had already signed the LOI and decided to sell her business.  *See* Dkt. No. 150-14 (Ex. K, Plaintiff's Demand Letter, dated 8/30/2019); Dkt. No. 150-15 (Ex. L, Certified Mail Receipt, dated 9/5/2019).  During her deposition, Defendant Singer confirmed that she received the Demand Letter on this date.  *See* Singer Deposition (N.T., 7/13/2023, at 180: 15-20).

8.      By including Little Walker as a defendant in March 2020, Plaintiff and Attorney McIlwain were fully aware of both (i) the sale of Twin Cedars and (ii) the identity of the Buyer. *See* Dkt. No. 17 at ¶¶ 34, 78-101.

9.      Attorney McIlwain chose not to include allegations that the sale of Twin Cedars violated the PUVTA until more than one (1) year after discovery of the sale, despite the absence of any factual support for alleging Singer sold the business "with actual intent to hinder, delay or defraud" Plaintiff as a future creditor. *See* Dkt. No. 75-3 (Plaintiff's Memo. in Support of Motion to Amend, 6/15/21, at 3-4) (citing 12 Pa. C.S.A. § 5104(a)(1) & (b)); Dkt. No. 109 (Second Amended Complaint, 12/13/21, at Count VIII, ¶¶ 83-86, 1-9).

10.      Plaintiff's First Amended Complaint simply alleged that Little Walker Defendants "seem[] to have now taken over the operations of Defendant Twin Cedars." Dkt. No. 17 (Am. Compl., 3/17/2020, at ¶¶ 34, 78-101).

11.      Plaintiff averred that Little Walker Defendants were "a successor[s]-in-interest [to Twin Cedars], without any substantively noticeable distinction to the public whatsoever." *Id.* at ¶ 34 ("Defendant Little Walker still operates the same personal care home facility with the same phone number, address, building, and website as did Defendant Twin Cedars.").

### This Court Granted Little Walker's Motion to Dismiss in 2020

12.      On June 17, 2020, Little Walker Defendants moved to dismiss the First

Amended Complaint under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff failed to allege the facts necessary to establish successor liability. *See* Dkt. Nos. 43 & 44 (Little Walker's Motion to Dismiss, 6/17/2020).

13.    This Court agreed that Plaintiff's claims against Little Walker lacked merit, and adopted Magistrate Judge Carlson's Report and Recommendation, thereby dismissing all claims against Little Walker *with prejudice*. *See* Dkt. No. 64 (Report and Recommendation, 11/23/2020); Dkt. No. 65 (Order, 12/11/2020).

14.    Magistrate Judge Carlson discussed the exceptions under Pennsylvania law that impose successor liability upon the "purchaser of assets[.]" Dkt. No. 64 at 10.  The Report and Recommendation made clear that Plaintiff exclusively based her claims of successor liability on the theories of "*de facto* merger and mere continuation[.]" *Id.*

15.    "There is no allegation [in Plaintiff's First Amended Complaint or Opposition Brief] that Little Walker agreed to assume these tort obligations from Twin Cedars[,]" Magistrate Judge Carlson explained, "**[n]or does Hamill allege that this [sale of Twin Cedars to Little Walker] was a fraudulent transaction**." *Id.* (emphasis added).

> [T]he complaint solely alleges that Twin Cedars continues to operate a senior living facility following Little Walker's purchase of its assets.  This is simply not enough to state a claim for successor liability against Little Walker.

*Id.* at 17-18.

16.    In fact, the First Amended Complaint was bereft of any allegations

discussing the transfer of ownership between Singer and Little Walker.  *See* Dkt. No. 17 (Am. Compl., 3/17/2020).

17.    Consistent with his pattern, Attorney McIlwain interpreted Magistrate Judge Carlson's reasoning as an invitation to offer new allegations that the sale of Twin Cedars had, in fact, been a fraudulent transaction voidable under PUVTA.

18.    Attorney McIlwain has pursued this theory, of course, without conducting the "reasonable inquiry" that Rule 11 demands of counsel *before* including such allegations in a federal filing.

### Plaintiff's Fraudulent Transfer Claim at Count VIII and Motion for Preliminary Injunction

19.    About six (6) months later, on June 15, 2021, Plaintiff and Attorney McIlwain sought leave to file a second amended complaint ("Second Amended Complaint") to add, *inter alia*, a cause of action against Defendant Singer and Little Walker Defendants related to unsubstantiated allegations that Singer intended to hide or dissipate her assets through the sale of the Twin Cedars business.  *See* Dkt. No. 75 (Plaintiff's Second Motion to Amend / Correct Amended Complaint, 6/15/2021).

20.    Count VIII alleges that (i) Defendant Singer received a demand letter from Attorney McIlwain for $15 million and, as a result of this demand, (ii) she "transferred the tangible and intangible assets of Twin Cedars Senior Living, LLC, to Little Walker Holdings, LLC." Dkt. No. 109 (Second Amended Complaint, 12/13/21, at Count VIII, ¶¶ 84-85).

21.    Plaintiff sought, *inter alia*, "voidance of [the] transferred assets" pursuant to § 5104 of the PUVTA. *Id.* at p. 23 (capital lettering omitted).

22.    Citing *Ambrogi v. Reber*, 932 A.2d 969 (Pa. Super. 2007) (Dkt. No. 109 at p. 23) as support for the legal theory under Count VIII, Plaintiff argued that she feared Defendant Singer "[was] liquidating assets in order to make [herself] 'execution proof[,]' " and that the $1 million insurance policy covering Twin Cedars would be inadequate to compensate her fully. Dkt. No. 75-3 (Plaintiff's Memo. in Support of Motion to Amend, 6/15/21, at 4-5).

23.    Plaintiff's Second Amended Complaint alleges one lone fact to substantiate Defendant Singer's "actual intent to hinder, delay or defraud" Plaintiff as a future creditor: that the sale of the Twin Cedars business *closed* after Singer purportedly received Attorney McIlwain's demand letter. *Id.* at 4 (quoting 12 Pa. C.S.A. § 5104(a)(1)).

24.    Neither the Second Amended Complaint, nor the Motion seeking leave to file, include any further allegations to explain why § 5104 applies to this transaction.

25.    Moreover, Plaintiff and Attorney McIlwain did not plead any new or additional <u>facts</u> to support these allegations of fraud – that is, facts that were not included in the First Amended Complaint where they unsuccessfully sought to assert successor liability against Little Walker Defendants.

26.    Instead, Plaintiff and Attorney McIlwain based Count VIII in their amended pleading solely upon the bald allegation that Defendant Singer sold her

business in order to hide her assets.  *See* Dkt. No. 109 (Second Amended Complaint, 12/13/21, at Count VIII, ¶¶ 84-85).

27.    Plaintiff and Attorney McIlwain, nevertheless, failed to plead *any* facts that substantiated their accusations of fraud against Defendant Singer.  *See* Dkt. Nos. 75 & 75-3 (Mot. Amend Compl. and Brief).

28.    Attorney McIlwain simultaneously filed a second motion based on the same unsupported allegations that Defendant Singer engaged in a fraudulent transaction with Little Walker for the sale of Twin Cedars.  *See* Dkt. No. 76 (Plaintiff's Motion for Prelim. Inj., 6/15/2021).

29.    Specifically, Attorney McIlwain moved for preliminary injunctive relief to void the transaction *immediately*, thereby ordering (i) that all proceeds from the sale of Twin Cedars be deposited with the court for the pendency of this litigation and (ii) that the real property located at 360-364 Walker Road Shohola, Pennsylvania be attached under 42 Pa. C.S.A. § 7501.  *See* Dkt. No. 76 at p. 3-4, ¶¶ 1-6.

30.    Plaintiff's Motion for Preliminary Injunction also demanded that Singer provide "an accounting of the proceeds of the sale of the aforementioned assets and real property[.]"  *Id.* at p. 4 ¶¶ 3-6.

31.    Despite a complete lack of evidentiary support, Attorney McIlwain asked this Court to sequester millions of dollars from Defendant Singer *before* Plaintiff obtained a judgment or established a right to recovery.

32.    After a lengthy briefing process where all parties submitted numerous

papers on the issues raised, Magistrate Judge Carlson conducted an oral argument in regard to the pending motions on September 15, 2021.  *See* Dkt. No. 98 (Order, 8/25/2021); *see also* Dkt. Nos. 85, 86, 91, 94 & 96.

33.    Judge Carlson considered the arguments presented and issued a Report and Recommendation (the "November 2021 Report"), which (i) denied Plaintiff's Motion for Preliminary Injunction but (ii) allowed Plaintiff to amend her pleading and file the Second Amended Complaint.  Dkt. No. 107 (Report & Rec., 11/19/21).

34.    The District Court promptly adopted Judge Carlson's Report and Recommendation.  Dkt. No. 108 (Order, 12/8/21).

### Fact Discovery, Rule 11's Safe Harbor and the Vexatious and Dilatory Tactics of Plaintiff's Counsel

#### *Defendant Singer's Original Rule 11 Motion and Little Walker's Motion to Dismiss*

35.    On May 20, 2022, Counsel for Defendant Singer served the required notice upon Attorney McIlwain and Plaintiff under the safe harbor provisions contained in Rule 11(c)(2).  *See* Fed. R. Civ. P. 11(c)(2).  A true and correct copy of the letter dated May 20, 2022 ("Rule 11 Notice Letter") and transmittal email are attached hereto as Exhibit "A".

36.    In serving Attorney McIlwain and Plaintiff with the Rule 11 Notice Letter, Counsel for Defendant Singer both (a) delineated the grounds for the Rule 11 violation, and (b) attached copies of the proposed Rule 11 Motion, supporting brief and proposed order.  The grounds remain unchanged.

37.    The safe harbor period expired twenty-one (21) days after Counsel for Defendant Singer served notice upon Attorney McIlwain and Plaintiff.  *See* Fed. R. Civ. P. 11(c)(2).

38.    On June 13, 2022, Defendant Singer filed a Motion pursuant to Rule 11(b), which sought dismissal of the PUVTA claim at Count VIII and the imposition of sanctions against Attorney McIlwain and Plaintiff.  *See* Dkt. No. 136 (Rule 11 Motion, 6/13/2022); Dkt. No. 139 (Brief in Support, 6/23/2022).

39.    Defendant Singer argued that the PUVTA Claim under Count VIII was frivolous and lacked any basis in fact or law, and therefore violated the delineated standard under Fed. R. Civ. P. 11(b).

40.    Singer's Rule 11 Motion maintained that, when Count VIII was added to the Second Amended Complaint, Attorney McIlwain and Plaintiff knew – or should have known – that the fraudulent transfer claim had no factual support in the record:

> No facts ever indicated, *inter alia*, (a) that the transaction occurred for less than adequate consideration; (b) that Singer or Twin Cedars Senior Living, LLC ("Twin Cedars") were left insolvent following the sale; (c) that Singer held any ownership interest in any entity that purchased her business; or (d) that Singer attempted to conceal the transaction or abscond with the proceeds. *See* 12 Pa. C.S.A. § 5104.

Dkt. No. 136 at 3-4.

41.    As a result of the District Court's adoption of Judge Carlson's November 2021 Report and Recommendation allowing Plaintiff to file a second amended complaint, Little Walker Defendants were – once again – brought back into the lawsuit

and forced to respond to Plaintiff's allegations.

42.    Accordingly, prior to Defendant Singer's Rule 11 Motion, Little Walker Defendants moved to dismiss Count VIII under Rule 12(b)(6) on February 18, 2022. *See* Dkt. No. 120 (Little Walker's Motion to Dismiss, 2/18/2022); Dkt. No. 121 (Brief in Support, 2/18/2022).

43.    Little Walker Defendants challenged Count VIII for failure to state claim, explaining that the cause of action (a) did not plead fraud with the particularity required by Fed. R. Civ. P. 9, and (b) did not include any factual allegations that – if true – would entitle Plaintiff to relief.  *Id.*

44.    On June 1, 2023, Defendant Singer filed a Motion for Judgment on the Pleadings under Fed. R. Civ. 12(c), raising virtually identical grounds to those raised by Little Walker Defendants in their Motion to Dismiss.  *See* Dkt. No. 210 (Singer's Motion for Judgment on the Pleadings, 6/1/2023); Dkt. No. 211 (Brief in Support, 6/15/2023) (arguing, *inter alia*, that Count VIII failed to allege fraud with the particularity required under Rule 9, and failed to state a claim upon which relief may be granted).

45.    Defendant Singer's Rule 12(c) Motion for Judgment on the Pleadings as to Count VIII remains pending and is ripe for determination.  *See id.*

### *The Facts Have Always Belied Plaintiff's PUVTA Claim*

46.    In permitting Plaintiff to amend her complaint to include the PUTVA claim at Count VIII, Judge Carlson had described "[a] **significant gap** between what is

alleged by the plaintiff, what is currently proven, and what the plaintiff must ultimately prove to prevail on this claim[.]"  *See* Dkt. No. 107 (Report & Rec., 11/19/21, at 19) (emphasis added).

47.    Attorney McIlwain, nonetheless, did not serve *any* additional written discovery requests on Defendant Singer or Little Walker Defendants – including noticing depositions – before fact discovery originally expired on **May 1, 2022**.  *See* Dkt. No. 111 (Scheduling Order, 12/20/21).

48.    Instead, on or about April 9, 2022, Attorney McIlwain chose to issue and serve three subpoenas directed to the IRS, the Pennsylvania Department of Revenue and PennDOT (the "Third Party Subpoenas").

49.    The Third Party Subpoenas targeted Defendant Singer's sensitive confidential, personal and financial information – that is, *all* of Defendant Singer's tax returns and motor vehicle records.  On their face, these subpoenas sought documents that had little – if any connection – to establishing whether Defendant Singer attempted to defraud Plaintiff by selling her business to Little Walker Defendants.

50.    Defendant Singer opposed Plaintiff's Third Party Subpoenas; on April 25, 2022, she moved to quash the subpoenas or to impose a protective order.  Dkt. No. 133 (Motion to Quash/Protective Order, 4/25/2022); Dkt. No. 134 (Brief in Support, 4/25/2022).

51.    Judge Carlson issued an Order on June 30, 2022 (Dkt. No. 140), which denied Defendant Singer's Motion to Quash Plaintiff's Third Party Subpoenas, but

which set forth parameters for a protective order concerning disclosure of Singer's tax returns and other documents containing sensitive information. *See* Dkt. No. 140 (Order and Opinion, 6/30/2022).

52.    On July 14, 2022, Defendant Singer timely objected to and appealed from Judge Carlson's non-dispositive discovery order pursuant to LR 72.2 and 28 U.S.C.A. § 636(b)(1)(A).   *See* Dkt. No. 145 (Statement of Appeal, 7/14/2022); Dkt. 146 (Brief in Support, 7/14/2022).

53.    Defendant Singer argued, *inter alia*, that sensitive information regarding her tax returns and finances is not relevant to any cause of action alleged by Plaintiff, and that any information pertinent to Count VIII's voidable transfer claim can be *more readily* obtained through other sources available to Plaintiff.   *See* Dkt. 146 at 10-14.

54.    Attorney McIlwain and Plaintiff already had copies of some or all of the transaction documents concerning the sale of the Twin Cedars business, which revealed that the transfer was an arms-length deal between unrelated parties for adequate consideration.

55.    Yet, notwithstanding all available information to the contrary, Attorney McIlwain and Plaintiff filed and pursued the spurious allegations contained in Count VIII against Defendant Singer.

56.    Plaintiff's Third Party Subpoenas are a transparent attempt by Attorney McIlwain to conduct – in effect – discovery in aid of execution and to obtain information about Defendant Singer's finances that would not ordinarily be

discoverable.  *See id.*  Attorney McIlwain and Plaintiff also used the Third Party Subpoenas to harass Defendant Singer and further explode her litigation costs.

57.    Defendant Singer's appeal of Judge Carlson's discovery order still remains pending.

58.    On July 22, 2022, in accord with the deadlines set forth in Judge Carlson's scheduling order, Defendant Singer and Little Walker Defendants filed separate Motions for Summary Judgment as to Count VIII.  *See* Dkt. No. 150 (Defendant Singer's Motion for Summary Judgment).

59.    In their respective Motions, both Defendant Singer and Little Walker Defendants explained that the factual record was entirely devoid of any scintilla of evidence remotely suggesting that the sale of Twin Cedars was undertaken with intent to defraud Plaintiff.  *See id.*

60.    Three (3) months had elapsed since the close of discovery before Attorney McIlwain decided to contact opposing counsel and request that this Court extend the discovery period.  *See* Dkt. No. 158 (McIlwain Letter, 8/8/22).

61.    At that time, in August of 2022, Defendants' had fully briefed dispositive motions in accord with this the current scheduling order.

62.    Despite prejudice to Defendant Singer from increased defense costs and further delays, Attorney McIlwain and Plaintiff were inexplicably given the opportunity to cure many of the discovery deficiencies in the record – deficiencies caused by Attorney McIlwain's dilatory tactics and repeated failure to prosecute his client's case.

*See* Dkt. No. 182 (Memorandum Order, 11/9/2022) (ordering, *inter alia*, parties to submit a new proposed case management order with deadlines for taking depositions of certain defense witnesses).

*Recommending Dismissal of Count VIII and*
*Attorney McIlwain's Use of Discovery as a Tool of Harassment*

63.    Thereafter, on August 5, 2022, Judge Carlson authored a Report and Recommendation (Dkt. No. 155) that counseled the District Court to grant Little Walker's pending Motion to Dismiss.

64.    This Court, on March 14, 2024, recently adopted Judge Carlson's Report and Recommendation (Dkt. No. 155), thereby dismissing Count VIII of the Second Amended Complaint as to Little Walker Defendants for failure to state a claim under Rule 12(b)(6).  *See* Dkt. No. 257 (Memorandum Opinion, 3/14/24, at 7).

65.    In recommending that the claim be dismissed against Little Walker Defendants, Judge Carlson observed as follows:

> [W]e conclude that Hamill's second amended complaint has not met Rule 9's particularity requirement with respect to these fraud allegations. Indeed, Count VIII **of the second amended complaint does not even directly assert that the defendants acted with fraudulent intent.** Further, many of §5104(b)'s "badges of fraud" seem to have no application here since **there are no allegations that this was an illicit insider transaction, involving highly suspicious timing or extensive evidence of flight and concealment.** Quite the contrary, it is evident from Hamill's pleadings that the plaintiff was aware of Little Walker's acquisition of Twin Cedars from the inception of this litigation since Hamill alluded to this fact in her initial complaint filed in February of 2020. (Doc. 1, ¶¶ 35, 36).

Dkt. No. 155 at 19 (emphasis added).

66.     After issuing the preceding Report and Recommendation, Judge Carlson stayed Defendant Singer's Rule 11 Motion "pending the district court's determination of the Report and Recommendation filed in this case, s**ince a ruling regarding whether to dismiss of Count VIII of plaintiff's amended complaint may be directly pertinent to this [Rule 11] motion**."  Dkt No. 164 (Order, 8/22/2022, at p. 2) (emphasis added).

66.     By Fall of 2022, the District Court had not yet ruled on this Report and Recommendation (Dkt. No. 155), and Judge Carlson was forced to consider Attorney McIlwain's late requests to extend the discovery period – once again – in order to accommodate his cavalier attitude towards deadlines and procedural rules.  *See* Dkt. No. 158 (McIlwain's Letter, 8/8/2022); Dkt. No. 167 (Plaintiff's Motion to Extend, 9/9/2022); Dkt. No. 168 (Plaintiff's Certification of Excusable Neglect, 9/2/2022).

67.     On November 9, 2022, Judge Carlson decided to deny Defendant Singer's Rule 11 Motion *without prejudice* "as premature while the district court considers the underlying merits of any dispositive motions and appeals [i.e., Report and Recommendation regarding Little Walker's Motion to Dismiss]."  Dkt. No. 181 (Order, 11/9/2022, at p. 2).

68.     Judge Carlson's order contemplated Defendant Singer renewing her Rule 11 Motion if, and when, the District Court ruled upon Little Walker's Motion to

Dismiss (or ostensibly any dispositive motion that disposed of Count VIII).[1]

69.    Despite Attorney McIlwain's numerous failures to prosecute his client's lawsuit, Judge Carlson allowed Plaintiff additional time to complete certain specified discovery items – including the depositions of Tamara Singer and the Little Walker principals, Jacob Gutman and Gary Rohinsky.  *See* Dkt. No. 188 (Scheduling Order, 12/2/2022).

### *Deposition of Defendant Singer*

70.    Attorney McIlwain deposed Defendant Singer on July 13, 2023, questioning her on the primary allegations surrounding the Decedent's death and discharge, as well as on subjects related to Plaintiff's PUTVA voidable transfer claim at Count VIII.

71.    Attorney McIlwain used Defendant Singer's deposition as an opportunity to further harass her, repeatedly making grotesque and inflammatory accusations against Defendant Singer that lacked any evidentiary basis.  *See* Singer Deposition (N.T., 7/13/2023, at 74: 9-15).  In particular, Attorney McIlwain accused Defendant Singer of starving Eugene Hamill when, in fact, the record proves that assertion to be a deliberate falsehood.  *See* Dkt. No. 150-4 (Ex. A, Hamill Height and Weight Measurements 9/18 through 10/18).  No evidence of starvation exists, as records indicate that Mr. Hamill

---

[1]  In the same order, Judge Carlson also denied a frivolous sanctions motion filed by Plaintiff, which was based upon Plaintiff's erroneous argument against Defendant Singer's valid appeal of the non-dispositive discovery order regarding the Third Party Subpoenas to IRS, the Pennsylvania Department of Revenue and PennDOT.

weighed 78-79 kg (or about 174-175 lbs.) in September of 2018.

72.    During the deposition, Attorney McIlwain demonstrated an appalling lack of knowledge concerning the elements and factual allegations required to prevail on Count VIII's PUVTA cause of action.  *See* Dkt. No. 238-5 (N.T., 7/13/2023, at 199: 15-25 – 200: 1-5; 202: 14-25 – 203: 1-2, 9-25).

73.    Attorney McIlwain ineptly questioned Defendant Singer about the valuation of Twin Cedars by asking her to specify the individual value of items listed as "furniture fixtures and equipment" in the Agreement of Sale – items such as dressers, medical beds and mattresses.  *See id.*

74.    Attorney McIlwain pursued this line of questioning, apparently, in an effort to probe the valuation for Twin Cedars; yet, Attorney McIlwain never identified or retained an appraisal expert, which would be necessary in order to challenge the value of the Twin Cedars business as reflected in the contemporaneous transaction documents.

75.    Attorney McIlwain's questioning revealed that he possesses little – if any – understanding about how an appraiser assesses the value of a business.

76.    Moreover, Attorney McIlwain failed to take the necessary steps to educate himself about the complexities underlying his client's PUVTA claim *before* he accused Defendant Singer of fraud in a federal court filing.

77.    After years of litigation and numerous extensions of the discovery deadline, Attorney McIlwain repeatedly failed to ask proper questions regarding the

valuation of the Twin Cedars business – a critical element of Plaintiff's PUVTA claim against Defendant Singer.

78.    Attorney McIlwain never asked (1) whether Defendant Singer or Little Walker Defendants obtained an appraisal in connection with the sale; or (2) whether an appraisal report exists and, if so, for the identity of the appraiser.

79.    Attorney McIlwain also questioned Defendant Singer about the annual top-line revenue for Twin Cedars, based upon his inaccurate calculation of that figure as "$1,536,360.00" drawn from "public information show[ing] that the lowest resident monthly room rate [wa]s ($3,658)[.]" Dkt. No. 224 at p. 19-20.

80.    Attorney McIlwain failed to obtain *any* expert appraisal testimony, which is necessary in order to review, evaluate and/or challenge the valuation of Twin Cedars set forth in the transaction documents of record.

81.    Yet Attorney McIlwain used his own faulty calculations to conclude that Plaintiff's PUVTA claim is "viable" since Defendant Singer sold "the entire business that had no debt for less than 1 year of revenue[.]" Dkt. No. 224 at p. 19.

81.    Defendant Singer's deposition reveals that Attorney McIlwain not only failed to investigate and research the PUVTA claim at Count VIII *before* he included those allegations in the Second Amended Complaint, but he failed to do so at *any point* during the litigation process over the next two (2) years. *See Gaiardo*, 835 F.2d at 482 (explaining that an attorney violates Rule 11 by failing to " 'Stop, Think, Investigate and Research' before filing papers").

82.     Rather, Attorney McIlwain chose to use the tools of fact discovery –
particularly, Defendant Singer's deposition and the issuance of the Third Party
Subpoenas – "to harass, cause unnecessary delay, [and] needlessly increase the cost of
litigation" for Defendant Singer.  *See* Fed. R. Civ. P. 11(b)(1).

83.     Plaintiff and Attorney McIlwain had no knowledge of any facts that
substantiated the allegations underlying Count VIII against Defendant Singer – that is,
when the PUVTA claim was added to the Second Amended Complaint, no facts
indicated that Defendant Singer attempted to defraud Plaintiff through the sale of Twin
Cedars.

84.     Discovery further revealed that Plaintiff's voidable transfer claim is
patently frivolous, as it revealed that no facts support the fraud allegations underlying
Count VIII.

88.     Despite being afforded permission by Judge Carlson, Attorney McIlwain
never noticed the depositions of Little Walker's principals, Jacob Gutman and Gary
Rohinsky.  *See* Dkt. No. 213 (Memorandum Order, 6/26/2023, at 3 ("Accordingly, IT
IS HEREBY ORDERED THAT the stay of discovery is lifted, and counsel shall
schedule the depositions of the individual defendants and corporate designees on or
before **August 1, 2023**.")

89.     Gutman and Rohinsky are the principals of Little Walker Defendants and
the buyers to the transaction, which Attorney McIlwain and his client allege was
undertaken in order to commit fraud and conceal assets.

90.    Attorney McIlwain's failure to depose Gutman and Rohinsky – despite being permitted to do so by Judge Carlson, against the opposition of counsel for Little Walker Defendants – demonstrates that Attorney McIlwain and his client included Count VIII in bad faith to harass Defendant Singer, cause her undue delay and increase her litigation costs.  *See* Fed. R. Civ. P. 11(b)(1).

*Deposition Testimony of Plaintiff, Jeanne Hamill and her Children*

91.    According to the testimony of Plaintiff Jeanne Hamill, the executor of the Decedent's Estate, she knew "**[n]othing**" about the transaction for the sale of Twin Cedars.  *See* J. Hamill Deposition (N.T., 1/3/2023, 131: 3-8) (emphasis added).

92.    Although she signed the verification regarding the allegations contained in the Second Amended Complaint, Mrs. Hamill only heard from her daughter that Defendant Singer had sold Twin Cedars.  *See* N.T., 1/3/2023, at 132: 2-13.

93.    Mrs. Hamill testified that, "[a]s far as [she] know[s]," the mere sale of Twin Cedars was the only objective evidence that Defendant Singer was attempting to dissipate her assets.  *See* N.T., 1/3/2023, at 138: 19-22.

94.    Mrs. Hamill had no knowledge that Defendant Singer ever attempted to conceal the transaction, or that she retained possession of the physical property of Twin Cedars following the transaction.  *See* N.T., 1/3/2023, at 139: 21-24 – 140: 1-7; 141: 9-12.

95.    Mrs. Hamill further testified that (i) she had been unaware of the purchase price or value of the Twin Cedars transaction, and that (ii) she had not reviewed any

transaction documents like the Deed or Agreement of Sale.  *See* N.T., 1/3/2023, at 142: 15-24; 143: 19-24 – 144: 1-15; 144: 20-24 – 145: 1-19.

96.    Mrs. Hamill also explained she was not aware of any information suggesting Defendant Singer owns (or owned) any equity interest in Little Walker Holdings, LLC or Shohola Realty, LLC.  *See* N.T., 1/3/2023, at 145: 20-24 – 146: 1-3.

97.    Decedent's children, Loriann Hamill and Lawrence Hamill, were also deposed.  They had no additional knowledge concerning the sale of Twin Cedars or any other facts that supported Count VIII's allegations.

**WHEREFORE**, Attorney McIlwain and his client must be sanctioned for their repeated and continuous violations of Rule 11 of the Federal Rules of Civil Procedure. Attorney McIlwain has a history of filing frivolous claims, and has previously received sanctions for doing so in the State of New Jersey.[2]  Defendant Singer respectfully requests that that these sanctions include: (i) the cost of her reasonable attorneys' fees that she has been forced to incur *for years* as a result of the litigation abuses described in this Motion and the accompanying Brief, and (ii) the dismissal with prejudice of Plaintiff's patently frivolous PUVTA claim at Count VIII and corresponding allegations

---

[2]   *See McIlwain v. Dodd*, No. 22-5219 (6th Cir. Nov. 22, 2022) (affirming dismissal of lawsuit filed by Attorney McIlwain against wife's attorney in custody dispute); "New Jersey Lawyer Suspended for Frivolous and Deceptive Conduct in Custody Case, ALAB News (Aug. 10, 2023) (URL: *https://alabnews.com/new-jersey-lawyer-suspended-for-frivolous-and-deceptive-conduct-in-custody-case/*) (Last visited: June 5, 2024) (suspending McIlwain for one month beginning on August 18, 2023).  Attorney McIlwain advised this Court of his suspension last year, although he did not expound upon the details of this suspension).

against her.[3]

Defendant Singer relies upon the arguments detailed in the Brief in Support of her Motion.  Singer will fully set forth the grounds of this Motion in the Brief in Support of Singer's Motion for Sanctions under Fed. R. Civ. P. 11 ("Brief"), which she will file within fourteen (14) days of the filing of this Motion as authorized by Local Rule 7.5, and which is incorporated by reference herein.

Respectfully submitted

GOLDSTEIN LAW PARTNERS, LLC

/s/ Shawn M. Rodgers
Shawn M. Rodgers (I.D. 307598)
Michael Yanoff (I.D. 19384)
200 School Alley, Suite 5
Green Lane, PA 18054
Phone: 610.949.0444
Fax: 610.296.7730
srodgers@goldsteinlp.com
myanoff@goldsteinlp.com

Counsel for Defendant Tamara B. Singer

Dated: June 11, 2024

---

[3]  Defendant Singer has filed dismissal of Count VIII by filing (i) a Motion for Summary Judgment and (ii) a Motion for Judgment on the Pleadings under Rule 12(c).  Notably, Defendant Singer's Rule 12(c) Motion relies upon nearly identical grounds as those articulated by Little Walker Defendants in their Motion to Dismiss, which this Court recently granted.