## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEANNE M. HAMILL,** | : | **Civ. No. 3:20-CV-231** |
| **Individually and as Administratrix and** | : | |
| **Administratrix ad Prosequendum of the** | : | |
| **Estate of Eugene Hamill, Deceased,** | : | |
| | : | **(Judge Mehalchick)** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **TWIN CEDARS SENIOR LIVING, LLC,** | : | |
| **d/b/a and a/k/a Twin Cedars** | : | |
| **Senior Living, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

## I.    Statement of Facts and of the Case

This is a personal injury, wrongful death, and survival action brought by Jeanne Hamill as administratrix of the estate of her late husband, Eugene Hamill. This case now comes before us for consideration of two defense sanctions motions: a motion for imposition of attorneys' fees as a sanction for discovery defaults, (Doc. 187), and a separate Rule 11 sanctions motion based upon what the defendants characterize as the pursuit of a frivolous fraudulent transfer claim by the plaintiff. (Doc. 262).

These motions call upon us to revisit three recurring themes in this litigation. First, we must examine the persistent efforts of the plaintiff to extend liability in this case to parties who had no involvement in the events that allegedly resulted in Eugene Hamill's injuries and death through various fraudulent transfer claims. Hamill has pursued these allegations of fraudulent asset transfers repeatedly throughout this litigation, but with a dearth of proof to support her claims.

Second, we must reflect upon what have been a series of grave discovery delinquencies by the plaintiff in the course of this litigation. These delinquencies and shortcomings have involved neglect and failure to comply with court orders in a timely fashion; unexcused failures to produce evidence; and an inexplicable and potentially prejudicial neglect of expert witness disclosure deadlines. In considering these discovery defaults we do not write upon a blank slate. Quite the contrary, we have already found that: "These are grave errors that in our view warrant some sanctions. However, we recognize that this case involves claims arising out of a fatality, and we do not believe that the lawyer's error should redound to the detriment of the client." (Doc. 182, at 1). Therefore, we denied the defendants' request to preclude expert testimony, but have granted the defendants leave to pursue monetary sanctions against plaintiff's counsel. (Id.)

Finally, these motions remind us that the parties' pursuit of sanctions in this case has, on occasion, delayed resolution of the important issues relating to the

underlying merits of the plaintiff's claims, claims that involve a fatality. We have previously decried the degree to which these sanctions disputes have delayed the progress of this case. We firmly believe that all parties should in the first instance give the highest priority to resolving the merits of this case.

## II.    **Factual Background and Procedural History**

In considering these two sanctions motions we do not write upon a blank slate. Quite the contrary, as discussed below, the often tortured past of this case now sets the stage for the current sanctions litigation.

### A.    **Plaintiff's Discovery Defaults**

This is certainly true with respect to the defendants' motion for attorneys' fees as a discovery sanction, (Doc. 187), where we have already spoken and found a dereliction of duty on the part of plaintiff's counsel. Specifically, in November of 2022, we considered a defense sanctions motion which sought preclusion of evidence as a discovery sanction. At that time, we found that:

> [T]he plaintiff has defaulted on her discovery obligations by providing inadequate responses to some discovery in November of 2020, by failing to timely schedule depositions in March of 2022, and by failing to make timely disclosures of expert witnesses by the June 2022 deadline prescribed by the court. (Doc. 142, at 2). While plaintiff's counsel has some disputes regarding deposition scheduling and the sufficiency of November 2020 discovery disclosures, with respect to the failure to make timely disclosure of expert witnesses, it seems undisputed that plaintiff's counsel did not comply with our scheduling order.

This failure to provide timely expert discovery is potentially highly prejudicial to the plaintiff's case.

Hamill v. Twin Cedars Senior Living, LLC, No. 3:20-CV-231, 2022 WL 16841289, at *1–2 (M.D. Pa. Nov. 9, 2022).

While we found that the plaintiff's counsel had engaged in this potentially prejudicial misconduct, we declined to impose the most drastic sanction of preclusion of evidence. Instead, we indicated that attorneys' fees may be the appropriate sanction, noting that:

> [W]e are mindful that "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905 (3d Cir. 1977). Therefore, the motion to preclude testimony will be denied, but counsel are directed to prepare a revised case management plan to allow for completion of expert discovery, and the court will entertain a request by defense counsel to require plaintiff's counsel "to pay the reasonable expenses, including attorney's fees, caused by the failure" to provide timely and fulsome discovery. Fed. R. Civ. P. 37(d)(3).

Id., at *2.

Thus, our prior rulings have foreshadowed that monetary sanctions may well be appropriate for this series of significant discovery defaults.

## B.    **The Plaintiff's Fraudulent Transfer Claim**

The defendants have also filed a motion seeking Rule 11 sanctions against the plaintiff's counsel based upon what they describe as persistent and frivolous efforts

to assert a state law fraudulent transfer of assets claim in this case. (Doc. 262). With respect to this motion, the past also serves as prologue for our consideration of this sanctions request. As we observed in the Report and Recommendation which recommended the dismissal of this claim, Hamill's counsel has repeatedly pursued a state law fraudulent transfer claim which was bereft of legal or factual support. At that time, we recited the following tortured history of this legal claim:

> Jeanne Hamill initially brought this case on behalf of her deceased husband on February 10, 2020. (Doc. 1). Hamill filed an amended complaint on March 17, 2020, (Doc. 17), and a second amended complaint on December 31, 2021, which is currently the operative pleading in this lawsuit. (Doc. 109).
>
> This second amended complaint alleges that Eugene Hamill became a resident of the defendant, Twin Cedars Senior Living, on July 6, 2018. (Id., ¶ 24). Mr. Hamill had several serious medical diagnoses, including hypertension, atrial fibrillation, and coronary artery disease, among others, and was required to wear a cardiac life vest. (Id., ¶ 25). The complaint further alleges that on September 11, 2018, Defendant Tamara Singer, who owned and operated Twin Cedars, made arrangements to discharge Mr. Hamill from that facility. (Id., ¶ 26). These arrangements allegedly included a three-hour Uber ride from Twin Cedars to Mr. Hamill's home in Toms River, New Jersey. (Id., ¶ 27). The second amended complaint further alleges that Defendant Singer was responsible for these arrangements, and that she was told it was an unsafe discharge plan. (Id.) Nonetheless, Mr. Hamill was discharged on September 11, 2018, and an Uber took him to his residence in Toms River.
>
> During the trip to Toms River, Mr. Hamill began vomiting in the Uber and became unresponsive. As his condition deteriorated, Mr. Hamill required an EMS transport to Barnabas Health Community Center where he was intubated, put on a ventilator, and placed in the Intensive Care Unit. (Id., ¶ 28). Mr. Hamill suffered a stroke and a heart attack. (Id., ¶30) Following treatment in the ICU, Mr. Hamill was transferred

to a Skilled Nursing Facility, where he remained until he passed away just over a year later on September 26, 2019. (Id., ¶¶ 29, 30).

While these allegations of medical neglect and negligence are set forth in detail in the plaintiff's second amended complaint, (Id., ¶¶ 1-35), notably the only defendants named as participants in these events are Tamara Singer and Twin Cedars. (Id.) Indeed, the first factual averment relating to the moving defendants in this case relates to Little Walker's purchase of the Twin Cedars facility in December of 2019, long after the events which inspired this lawsuit. (Id., ¶¶ 36, 83-88).

On the basis of these allegations of medical neglect and negligence which allegedly resulted in the death of Eugene Hamill, the plaintiff's second amended complaint brings claims of negligence, wrongful death, and a survival action against Twin Cedars and Singer. (Id., Counts I-VI). In addition, the plaintiff's second amended complaint brings a claim against Singer and Twin Cedars under Pennsylvania's Unfair Trade Practices and Consumer Protection Act, 73 Pa.C.S. § 201-1. (Id., Count VII).

However, the second amended complaint also sets forth in Count VIII a claim naming all of the defendants, including defendants Gutman, Rohinsky, Little Walker Holdings, LLC, and Shohola Realty, LLC. (Id., Count VIII). In Count VIII of the second amended complaint, the plaintiff seeks to void the December 2019 sale of the Twin Cedars facility to Little Walker Holdings, LLC, and demands other sweeping injunctive relief including the freezing of assets and an injunction compelling the parties to place in escrow the proceeds from this December 2019 real estate transaction pending the ultimate outcome of this lawsuit. While it is not entirely clear from the second amended complaint, it appears that the plaintiff asserts this fraudulent transfer claim pursuant to Pennsylvania's Uniform Fraud Transfer Act ("PUVTA"). 12 Pa. Cons. Stat. § 5104.

We note that these averments in the plaintiff's second amended complaint are but the latest in a series of persistent efforts by the plaintiff to extend the scope of potential liability in this case to parties who admittedly had no direct involvement in the matters which led to the death of Eugene Hamill. These efforts began with Hamill's initial and first amended complaints, both of which named Little Walker

Holdings, LLC, as a defendant based upon a successor corporate liability theory due to Little Walker's purchase of Twin Cedars in December of 2019. Upon review of this allegation, we recommended that this claim be dismissed noting that:

> In sum, Hamill has not alleged factual averments that are sufficient to support an inference of successor liability against Little Walker, either under a *de facto* merger theory or a "mere continuation" theory. Rather, the complaint solely alleges that Twin Cedars continues to operate a senior living facility following Little Walker's purchase of its assets. This is simply not enough to state a claim for successor liability against Little Walker.

Hamill v. Twin Cedars Senior Living Ctr., No. 3:20-CV-231, 2020 WL 7329228, at *7 (M.D. Pa. Nov. 23, 2020), report and recommendation adopted sub nom. Hamill v. Twin Cedars Senior Living, LLC, No. 3:20-CV-231, 2020 WL 7323870 (M.D. Pa. Dec. 11, 2020). In December of 2020, the district court adopted this recommendation, and Little Walker Holdings, LLC was dismissed as a defendant.

Undeterred, the plaintiff sought to renew claims against Little Walker and others under a slightly different garb. Specifically, in June of 2021, Hamill filed a motion for preliminary injunction and a second motion to amend her complaint. (Docs. 75, 76). In these pleadings, Hamill sought to join Little Walker Holdings, LLC, Shohola Realty, LLC, Jacob Gutman, and Gary Rohinsky as defendants. Hamill also requested that we grant her sweeping prayer for preliminary injunctive relief, requesting that the court void the December 2019 transfer of the assets and real property of Twin Cedars, order an accounting of the proceeds of any sales or transfers, and direct that the proceeds from the transfer of Twin Cedars or sale of real property be held in escrow. (Doc. 76).

Upon consideration, we recommended that Hamill's motion for preliminary injunction be denied, finding that:

> Here, at this early stage in the litigation where the plaintiff has not yet prevailed on any of her claims, we cannot conclude that the plaintiff will suffer irreparable harm if

the preliminary injunction is not granted. The plaintiff has not shown that absent a court order to place the proceeds of these sales or transfers in escrow, there will be insufficient funds to pay a future money judgment if she prevails on her claims. Additionally, as we have noted, Twin Cedars currently has an insurance policy with limits of $1 million dollars. While the plaintiff has demanded $15 million in damages, we are unaware of any similar cases in this district where such a high verdict has been awarded. Moreover, we are constrained to note the possible hurdles the plaintiff may face in terms of proving causation, as the decedent died more than one year after his discharge from Twin Cedars.

In sum, as part of her irreparable injury showing Hamill invites us to make a series of speculative inferences: first, that she will prevail; second, that an award will far exce[ed] $1,000,000 and will almost certainly entail up to $15,000,000; and third, that the defendants will be unable to satisfy such a judgment, when and if this judgment is incurred. On the spare factual record presently before us we cannot conclude that the plaintiff has shown she will be subject to irreparable harm if the injunction is not granted. The plaintiff has provided no evidence at this juncture that absent the injunction, the defendants will be unable to pay any monetary judgment she may be awarded in the future. Accordingly, because the plaintiff has failed to meet the two threshold elements for a preliminary injunction, we recommend that the motion for preliminary injunction be denied.

(Doc. 107, at 11-12).

In rejecting Hamill's request for this far-reaching preliminary injunctive relief, we also noted that it appeared that the plaintiff was inviting us to draw an inference that the sale of this property was a fraudulent transfer based solely upon the timing of the transfer, which took place four months after plaintiff's counsel served a $15,000,000 demand letter upon Tamara Singer and Twin Cedars. We concluded, however, that

other, uncontested evidence largely undermined this causal inference since:

> [W]hile these transfers were finalized after the demand letter was received, the process of selling Twin Cedars' assets and property began in December of 2018, well before the demand letter was received. (Doc. 86-2, at 3). Indeed, Singer contends that she contacted a real estate attorney in November of 2018; hired a market professional to analyze feasibility in February of 2019; signed a listing agreement with a brokerage firm and contacted an environmental impact group in March of 2019; entered into a listing agreement with a general business broker in June of 2019; and on August 15, 2019—two weeks before the demand letter was received—executed a Letter of Intent with the buyers of Twin Cedars, Jacob Gutman and Gary Rohinsky. (Id.) Accordingly, given the current state of the evidence this factor does not weigh in favor of finding that this transfer was fraudulent.

(Id., at 9).

However, in recognition of the policy embodied in Rule 15 of the Federal Rules of Civil Procedure favoring liberal amendment of pleadings, we recommended that Hamill be given leave to amend her complaint in order to try to state a claim upon which relief may be granted. (Id., at 20). The district court adopted this recommendation. (Doc. 108). On December 13, 2021, Hamill complied with this instruction and filed her second amended complaint in this case. (Doc. 109).

With respect to the fraudulent transfer of assets claim against defendants Little Walker, Shohola, Gutman, and Rohinsky, the factual narrative set forth in this pleading remains threadbare. In her second amended complaint, Hamill identified the corporate defendants, Little Walker and Shohola, and stated that Mr. Gutman and Mr. Rohinsky were the owners and organizers of these two companies. (Id., ¶¶16-18). The plaintiff then alleges in a cursory fashion that on August 19, 2019, Tamara Singer and Twin Cedars received a $15,000,000 demand letter from plaintiff's counsel. (Id., ¶84). According to Hamill, four months

later, in December of 2019, Little Walker acquired ownership of the Twin Cedars facility. (Id., ¶¶ 85, 86).

Notably missing from Count VIII of this second amended complaint was any reference to Pennsylvania's Uniform Fraud Transfer Act ("PUVTA"). 12 Pa. Cons. Stat. § 5104. Moreover, this count of the second amended complaint did not even directly allege any fraud on the part of the defendants. Instead, it simply averred that Defendants Little Walker, Shohola, Gutman, and Rohinsky acquired this property "with knowledge, actual or constructive, of the Plaintiff's pending claim and potential legal action." (Id., ¶ 88). It is upon these thin reeds that the plaintiff once again attempted to assert legal claims against these parties who had absolutely no involvement in the seminal events giving rise to this lawsuit.

Hamill v. Twin Cedars Senior Living, LLC, No. 3:20-CV-231, 2023 WL 10991318, at *4 (M.D. Pa. Sept. 20, 2023), report and recommendation adopted sub nom. Hamill v. Twin Cedars Senior Living, LLC., No. 3:20-CV-00231, 2024 WL 4100874 (M.D. Pa. Sept. 6, 2024) (footnote omitted).

Noting that, with respect to this fraudulent transfer claim, "Hamill insists that she is proceeding on a claim of actual, rather than constructive, fraud, stating that the plaintiff is 'alleging that this transfer was done with the actual intent to defraud,'" we found that "this claim fails both in its pleading and in its proof." Id., at *7. First, we found this claim to be legally deficient in terms of its pleading, noting that:

In the instant case, we conclude that Hamill's second amended complaint has not met Rule 9's particularity requirement with respect to these fraud allegations. Indeed, Count VIII of the second amended complaint does not even directly assert that the defendants acted with fraudulent intent. Further, many of § 5104(b)'s "badges of fraud" seem to have no application here since there are no allegations that this was

an illicit insider transaction involving highly suspicious timing or extensive evidence of flight and concealment.

Quite the contrary, it is evident from Hamill's pleadings that the plaintiff was aware of Little Walker's acquisition of Twin Cedars from the inception of this litigation since Hamill alluded to this fact in her initial complaint filed in February of 2020. (Doc. 1, ¶¶ 35, 36).

Instead, the plaintiff simply alleges that Little Walker acquired these assets some four months after the plaintiff's counsel issued a demand letter to Tamara Singer and Twin Cedars, and suggests that the defendants should have had actual or constructive knowledge of Hamill's demand when these acquired this property. In our view, the plaintiff may not rely upon this tenuous chronology of events to satisfy her obligation to plead fraud with particularity. Moreover, given the plaintiff's insistence that this claim proceeds solely upon an actual fraud theory, a claim of constructive knowledge of Hamill's claims, standing alone, is insufficient to establish fraudulent intent. In light of Rule 9's heightened pleading requirements, more is needed here in order to state a plausible claim of fraudulent transfer against defendants.

Furthermore, with respect to the individual defendants, Mr. Gutman and Mr. Rohinsky, there is yet another obstacle to Hamill maintaining this fraudulent transfer claim. The well-pleaded facts in the second amended complaint simply allege that the Twin Cedars property was sold to a separate corporation, Little Walker Holdings, LLC, in December of 2019. Mr. Gutman and Mr. Rohinsky, in turn, are merely alleged to be the owners of Little Walker. Therefore, in order to sustain this claim against the individual defendants Hamill's second amended complaint seems to invite us to pierce the corporate veil in order to hold these individuals liable.

This we cannot do based upon the threadbare allegations in the second amended complaint.

Id., at *8–9.

We then concluded that the claim was factually bankrupt, finding that:

Aside from this failure of pleading, Hamill's fraudulent transfer claim encounters insurmountable problems of proof. On this score, notably, Hamill appeared to have engaged in virtually no discovery to support these claims, despite having been put on notice by the court that there was a paucity of proof with respect to these fraudulent transfer of asset claims.

Instead, the undisputed evidence undermines this claim of fraud. For example, the apparent premise of Hamill's fraudulent transfer claim is her contention that Singer moved to sell Twin Cedars after she learned of this potential litigation. This premise, which is the lynchpin of this fraudulent transfer claim, is completely refuted by the evidence that shows that Tamara Singer was actively engaged in the marketing of Twin Cedars long before she first received notice of this potential litigation in September of 2019. On this score, the evidence shows that Singer contacted a real estate attorney in November of 2018; hired a market professional to analyze feasibility in February of 2019; signed a listing agreement with a brokerage firm and contacted an environmental impact group in March of 2019; entered into a listing agreement with a general business broker in June of 2019; and on August 15, 2019—two weeks before the demand letter was received— executed a Letter of Intent with the buyers of Twin Cedars, Jacob Gutman and Gary Rohinsky.

Further, the undisputed evidence reveals this transaction has none of the "badges of fraud" that are typically required to sustain a fraudulent transfer claim. The record before us reflects nothing more than a valid arms' length transaction between unrelated parties that was supported by adequate consideration. Thus, there is no evidence that Singer engaged in a collusive transfer of Twin Cedars to Little Walker, Gutman, or Rohinsky. Quite the contrary, the transaction was an open one, openly arrived at, and openly consummated between these parties in December of 2019. (Doc. 150-2 ¶¶ 21-35). Moreover, Singer, who by this time had received an initial communication from plaintiff's counsel regarding Hamill's potential claim which had not yet ripened into litigation, was completely transparent about this fact in her disclosures made in connection with this sale. Simply put, the evidence does not permit a reasonable inference of fraudulent collusion in this transaction.

Further, the fact that more than $5,000,000 was exchanged by the parties in consideration for the sale of this business and property is a clear indication that this was a legitimate arms' length transaction and not some fictitious or fraudulent transaction. In addition, it is abundantly clear that these defendants have had no other ongoing business dealings that would be suggestive of some subterfuge or fraud. Thus, there is no indication that Singer plays an active role in the current operations of this business. Finally, there is no showing that the defendants have engaged in some calculated effort to become judgment proof in anticipation of this litigation. Instead, it is undisputed that the defendants have, at a minimum, $1,000,000 in insurance coverage to address any judgments that might arise out of this litigation.

At this juncture, it is incumbent upon Hamill to plead and point to some evidence of fraud to sustain this claim which seeks extraordinary injunctive relief. We have over the course of this lawsuit provided Hamill ample opportunity to do so, despite her discovery defaults. Despite being afforded these opportunities, Hamill has failed to adequately plead or prove these claims. This failure has consequences and now compels the dismissal of this fraudulent transfer claim.

Id., at *10–11 (footnote omitted). We therefore recommended the dismissal of this claim, a recommendation that the district court adopted on September 6, 2024, holding that:

As the Report correctly concludes, the record indicates that Plaintiff has failed to engage in meaningful discovery to support her fraudulent transfer claim, having deposed no member of the defense other than Singer and having been consistently recalcitrant regarding discovery deadlines, including submissions of expert medical opinions. (Doc. 240, at 28). Plaintiff's response to Singer, Twin Cedars, and Blaire Realty's motion for summary judgment as to the fraudulent asset transfer claim and their accompanying statement of undisputed facts fails to provide any citations to the record indicating a dispute related to the equivalent value exchanged in the asset transfer or evidence of actual fraud or intent to defraud. (Doc. 171-1, at 9-12); see 12 Pa. Cons. Stat. Ann. § 5104.

13

Plaintiff fails to point to record evidence that the more than $5,000,000 exchanged in the transaction was not a reasonably equivalent exchange value for the transaction. (Doc. 150-13, at 6; Doc. 240, at 25; Doc. 173-1, at 11). In her response to Singer, Twin Cedars, and Blaire Realty's statement of undisputed facts, Plaintiff does not deny that Little Walker Defendants "paid reasonably equivalent value for the real property." (Doc. 173-1, ¶ 31). See In re Burke, 523 B.R. 765, 772 (Bankr. E.D. Pa. 2015) (granting summary judgment to defendants in a fraudulent asset transfer claim plaintiff did not "come forward with proof, (*e.g.*, affidavits or an expert report) in support of the factual contentions underlying his claim (*i.e.*, that the Debtors own assets that they did not disclose or undervalued disclosed assets or transferred assets pre-petition without disclosing those transfers)"). Accordingly, for the purpose of the instant motions, this Court accepts as true that the $5,000,000 exchanged in the transaction was reasonable. See In re Burke, 523 B.R. at 772.

Further, Plaintiff has not directed this Court to any evidence in the record of "actual intent to hinder, delay or defraud any creditor of the debtor." 12 Pa. Cons. Stat. Ann. § 5104. In fact, Plaintiff acknowledges that Singer maintains an insurance plan that provides coverage for up to $1,000,000 in damages resulting from this suit. This indicates the security of a judgment in Plaintiff's favor. (Doc. 173-1, ¶¶ 31, 36). Plaintiff also has not pointed to any support in the record for her claim that the timing of the transaction suggests the presence of fraud. (Doc. 86-2, at 3; Doc. 240, at 8). Singer began the sale process for Twin Cedars in 2018, long before Mr. Hamill's death, Plaintiff's demand latter, or the filing of Plaintiff's claims. (Doc. 86-2, at 3; Doc. 240, at 8). Plaintiff has not indicated support for a different timeline that would create a dispute about the start of the sale process. (Doc. 240, at 8). The timing thus indicates that the transaction was not executed to escape liability for these claims. See Su v. Comprehensive Healthcare Mgmt. Servs., LLC, No. 2:18-CV-1608, 2023 WL 6518955, at *6 (W.D. Pa. Oct. 5, 2023) ("[t]o determine an actor's 'actual intent[ under § 5104], a court considers the circumstances of the transaction, such as whether the transfer was to an insider and the timing of the transfer, particularly as related to any legal action pending against the transacting party as well as any impending liabilities or obligations.")(citing 12 Pa. Cons. Stat. Ann. § 5104(b)). This Court agrees that Plaintiff's assertion that the transaction was fraudulent and that Singer remained in control of

Twin Cedars is unsupported by the record. (Doc. 227-1). Plaintiff's evidence that Singer remained in control of Twin Cedars is entirely based upon a report by a third-party unauthenticated website "Whois.com" that claimed that Singer still owned Twin Cedars. (Doc. 227-1). This is not sufficient for this Court to find a genuine material fact in dispute related to intent to defraud or a finding of prejudice. (Doc. 227-1); see In re Burke, 523 B.R. at 772 ("[h]aving failed to place any evidentiary matter in the summary judgment record, the [p]laintiff has not met the burden necessary to defeat the [summary judgment m]otion" on plaintiff's fraudulent transfer claim); In re May, 661 B.R. 40, 54 (Bankr. E.D. Pa. 2024) (granting summary judgment because "[the plaintiff] facing a motion for summary judgment, offers *no evidence* to support [her claims]; her [r]esponse is devoid of any documentary or testamentary evidence [...], causing the court to conclude that the [she] has no such evidence.") (quoting In re Polichuk, 506 B.R. 405, 423 (Bankr. E.D. Pa. 2014) (emphasis added); 12 Pa. Cons. Stat. Ann. § 5104.

These responses, or lack thereof, to Singer, Twin Cedars, and Blaire Realty's statement of undisputed facts show that there is no dispute as to (1) the reasonable value exchanged in the transaction or (2) the existence of an insurance policy proving liability coverage for these claims, supporting the inference that the transaction was not an effort to avoid judgment on the matter. See 12 Pa. Cons. Stat. Ann. § 5104; see also Eddystone Rail Co., LLC v. Bridger Logistics, LLC, No. 2:17-CV-00495-JDW, 2024 WL 3090882, at *36 (E.D. Pa. June 21, 2024) (holding that a plaintiff must show the elements of a fraudulent asset transfer claim, (1) evidence that reasonable value was not exchanged in the transaction and (2) evidence of actual intent to hinder, delay or defraud a creditor, such as an effort to avoid judgment or liability). The Court agrees with Judge Carlson's conclusion that "the undisputed evidence reveals this transaction has none of the 'badges of fraud' that are typically required to sustain a fraudulent transfer claim." (Doc. 240, at 24); see 12 Pa. Cons. Stat. Ann. § 5104. Accordingly, Singer, Twin Cedars, and Blaire Realty's motion for summary judgment as to Plaintiff's fraudulent asset transfer claim is **GRANTED**. See In re Burke, 523 B.R. at 772 (granting summary judgment on a fraudulent asset transfer claim because "a nonmoving party may not rely on bare assertions, conclusory allegations or suspicions, nor rest on the allegations in the pleadings. Rather, the nonmoving party must go

beyond the pleadings and either by affidavits, depositions, answers to interrogatories, or admissions on file, designate specific facts showing that there is a genuine issue for trial."). Plaintiff's fraudulent asset transfer claim is hereby **DISMISSED**

Hamill v. Twin Cedars Senior Living, LLC., No. 3:20-CV-00231, 2024 WL 4100874, at *5–6 (M.D. Pa. Sept. 6, 2024).

It is against this factual and procedural backdrop that we consider these sanctions motions.

## III.   Discussion

### A.   The Motion for Attorneys' Fees as a Discovery Sanction Should Be Granted.

Turning first to the defendants' motion for attorneys' fees as a discovery sanction, (Doc. 187), it has long been held that decisions regarding Rule 37 discovery sanction motions are "committed to the sound discretion of the district court." Cartagena v. Serv. Source, Inc., 328 F.R.D. 139, 142 (M.D. Pa. 2018) (quoting DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974)).

This discretion is guided, however, by certain basic principles. For example, Rule 37 of the Federal Rules of Civil Procedure provides that: "If a party.... fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders," and specifies an array of available sanctions. Fed. R. Civ. P. 37(b)(2)(A). In addition to these specifically identified sanctions, the rule also provides that: "Instead of or in addition to these sanctions, the court *must* require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3)(emphasis added).

16

Likewise Rule 37(a)(5) calls for payment of attorney's fees relating to compelled discovery practice, and provides that the party whose non-disclosure or incomplete disclosure required litigation of a motion to compel:

> [M]ust ... pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5).

Thus, by its terms Rule 37 seems to call for the imposition of attorney's fees in discovery litigation, unless the position of the party who failed to make discovery was "substantially justified." Therefore, as a threshold matter in ruling on this sanctions matter, we must make a determination regarding: (1) whether there was a failure of discovery and (2) whether the conduct of a party that is alleged to have failed in some discovery obligation was substantially justified.

Id. at 143.

Guided by these legal standards, we conclude that attorneys' fees are an appropriate sanction for plaintiff counsel's discovery defaults. At the outset, it is clear that there was a multi-facetted, culpable failure to make discovery in this case. Indeed, we have previously found that:

> [T]he plaintiff has defaulted on her discovery obligations by providing inadequate responses to some discovery in November of 2020, by failing to timely schedule depositions in March of 2022, and by failing

> to make timely disclosures of expert witnesses by the June 2022 deadline prescribed by the court. (Doc. 142, at 2). While plaintiff's counsel has some disputes regarding deposition scheduling and the sufficiency of November 2020 discovery disclosures, with respect to the failure to make timely disclosure of expert witnesses, it seems undisputed that plaintiff's counsel did not comply with our scheduling order.

Hamill, 2022 WL 16841289, at *1–2. Further, this failure to provide timely disclosures was prejudicial to all parties in that it led to needless delay and expense as well as potentially prejudicing the presentation of these claims.

Moreover, Hamill's counsel does not seriously contend that he was substantially justified in failing to make timely and proper discovery. (Doc. 190). Instead, plaintiff's counsel simply urges us to limit the scope of recoverable fees, consider counsel's ability to pay when making a fees award, and defer imposition of these fees pending the completion of merits litigation. Therefore, we also find that the failure to make discovery in this case was not substantially justified. Concluding that (1) there was a failure of discovery; and (2) the conduct of a party that is alleged to have failed in some discovery obligation was not substantially justified, Cartagena, 328 F.R.D. at 143, we will GRANT this motion for attorneys' fees, with respect to legal fees incurred directly as a result of the discovery defaults identified in our November 2022 ruling, and will prescribe below the time and manner in which this sanction will be calculated and assessed.

**B. <u>The Motion for Rule 11 Sanctions Will Be Granted, in Part</u>**.

We also conclude that some Rule 11 sanctions are appropriate here. Several basic guiding principles inform our resolution of the instant sanctions motion. By its terms, Rule 11 imposes an obligation upon litigants to refrain from frivolous and vexatious litigation, and specifically provides that:

> By presenting to the court a pleading, written motion, or other paper-- whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Having imposed this duty of forthrightness, candor, and good faith upon litigants, Rule 11(c) then provides for sanctions against parties who indulge in baseless and frivolous litigation, stating that:

**(c) Sanctions.**

**(1) *In General.*** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

**(2) *Motion for Sanctions.*** A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

--------------------------------------------------------------------

**(4) *Nature of a Sanction.*** A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c).

"A filing is 'frivolous' for Rule 11 purposes if it is both baseless and made without a reasonable inquiry." Zion v. Nassan, 727 F. Supp. 2d 388, 413 (W.D. Pa. 2010) (citing Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir.2005)). On this score:

An attorney must conduct a reasonable inquiry before filing a lawsuit, and cannot pursue the action unless he or she reasonably believes that facts exist to support the allegations. FED. R. CIV. P. 11(b)(3); see Chandler v. Norwest Bank Minn., Nat'l Ass'n, 137 F.3d 1053, 1057 (10th Cir.1998) (holding that, although the attorney may have reasonably believed a claim would have evidentiary support, the

attorney failed to conduct a reasonable inquiry). The allegations in the complaint must be likely to have evidentiary support following "investigations or discovery," or, if so identified, "are reasonably based on a lack of information or belief." 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1334 at 539 (3d ed. 2004). A court must consider six factors in evaluating what constitutes a reasonable inquiry under the circumstances:

> (1) the amount of time available to the signer for conducting a factual and legal investigation; (2) the necessity of relying on a client for the underlying factual information; (3) the plausibility of the legal position advocated; (4) the complexity of the legal and factual issues implicated; (5) whether the signer depended on forwarding counsel or another member of the bar; and (6) whether the signer was in a position to know or acquire the relevant factual details.

Zion, 727 F. Supp. 2d at 411 (citing Hanoverian. Inc. v. Pa. Dep't of Envtl. Prot., No. 1:07–CV–00658, 2008 WL 906545, at *10 (M.D. Pa. Mar. 31, 2008); CTC Imps. & Exps. v. Nigerian Petroleum Corp., 951 F.2d 573, 578 (3d Cir.1991)).

Further, in determining whether to impose Rule 11 sanctions in a given case, we are cautioned that:

> The standard developed by courts for imposition of sanctions under Rule 11 is stringent because such sanctions 1) are "in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes," Eastway Construction Corp. v. City of New York, 637 F.Supp. 558, 564 (E.D.N.Y. 1986), modified and remanded, 821 F.2d 121 (2d Cir.), cert. denied 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); 2) tend to "spawn satellite litigation counter-productive to efficient disposition of cases," Gaiardo, 835 F.2d at 482; and 3) "increase tensions among the litigating bar and between [the] bench and [the] bar." Eastway Construction Corp., 637 F.Supp. at 564. This Court and others have

21

interpreted its language to prescribe sanctions, including fees, only in the "exceptional circumstance", <u>Gaiardo</u>, 835 F.2d at 483, where a claim or motion is patently unmeritorious or frivolous. <u>See, e.g.</u>, <u>Lieb v. Topstone Industries, Inc.</u>, 788 F.2d 151, 157 (3d Cir. 1986) ("Rule 11 therefore is intended to discourage pleadings that are 'frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.'") (quoting <u>Zaldivar v. City of Los Angeles</u>, 780 F.2d 823, 831 (9th Cir. 1986)); <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1275 (2d Cir. 1986) ("[R]ule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.'") (quoting <u>Eastway Construction Corp. v. City of New York</u>, 762 F.2d 243, 254 (2d Cir. 1985)), <u>cert. denied sub nom.</u> <u>County of Suffolk v. Graseck</u>, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

<u>Doering v. Union Cty. Bd. of Chosen Freeholders</u>, 857 F.2d 191, 194 (3d Cir. 1988).

Consistent with this stringent view of Rule 11 sanctions, it is also clear that:

Rule 11 sanctions are based on " 'an objective standard of reasonableness under the circumstances.' " <u>Id</u>. at 453 n. 3 (quoting <u>Mary Ann Pensiero, Inc. v. Lingle</u>, 847 F.2d 90, 94 (3d Cir.1988)). Bad faith is not required. <u>Id.</u>; <u>Jones</u>, 899 F.2d at 1358." <u>Martin v. Brown</u>, 63 F.3d 1252, 1264 (3d Cir.1995). Furthermore, it is well-settled under Rule 11 that: "Sanctions are to be applied only 'in the "exceptional circumstance" where a claim or motion is patently unmeritorious or frivolous.' <u>Doering v. Union County Bd. of Chosen Freeholders</u>, 857 F.2d 191, 194 (3d Cir.1988) (citation omitted). Rule 11's 'primary purpose is not "wholesale fee shifting but [rather] correction of litigation abuse .' " <u>Id</u>. (alteration in original) (citation omitted). It 'must not be used as an automatic penalty against an attorney or party advocating the losing side of a dispute,' and it 'should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories.' <u>Mary Ann Pensiero, Inc. v. Lingle</u>, 847 F.2d 90, 94 (3d Cir.1988) (citation omitted)." <u>Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account</u>, 618 F.3d 277, 297 (3d Cir.2010).

United States v. Bogart, No. 4:12-CV-347, 2014 WL 7466598, at *2 (M.D. Pa. Dec. 8, 2014). "Moreover, the guiding purpose in fixing Rule 11 sanctions is fashioning a sanction adequate to deter undesirable future conduct." DiPaolo v. Moran, 407 F.3d 140, 146 (3d Cir. 2005). Therefore, when considering a sanctions motion, it is clear that "the main purpose of Rule 11 is to deter, not to compensate." Zuk v. E. Pennsylvania Psychiatric Inst. of the Med. Coll. of Pennsylvania, 103 F.3d 294, 301 (3d Cir. 1996). Further, "[t]he language of Rule 11 evidences the critical role of judicial discretion' in making sanctions determination." DiPaolo, 407 F.3d at 145. This discretion extends both to the decision to impose sanctions, and the determination of what an appropriate sanction may be. Id.

While these are exacting standards, in this case we find that the imposition of some Rule 11 sanctions is warranted. At the outset, giving plaintiff's counsel the benefit of every reasonable doubt, we conclude that counsel's initial efforts to establish some form of successor liability through a fraudulent asset transfer claim can be viewed as adventuresome, though responsible, lawyering which advocates creative legal theories. However, by the time that plaintiff's counsel was called upon to file the second amended complaint in this case, Hamill's initial theories for successor liability based upon a fraudulent asset transfer had been wholly undermined both legally and factually. Therefore, before he filed this thoroughly discredited claim once again in the face of evidence rebutting the claim, counsel had

a legal and ethical obligation to conduct a reasonable inquiry into the continued viability of this claim.

This counsel failed to do. Thus, there is no indication that plaintiff's counsel engaged in any discovery in order to factually bolster this claim before filing the second amended complaint, and the allegations set forth in the second amended complaint were woefully inadequate to state a claim of actual fraud by the defendants. At this juncture, counsel's conduct fell far below what Rule 11 demands. And at this point counsel's actions were no longer adventuresome, though responsible, lawyering which advocates creative legal theories. Rather, counsel's behavior had devolved into the assertion of frivolous claims advanced without a reasonable basis in law or fact. Further, by this juncture, plaintiff's counsel knew better than to engage in ethically problematic behavior. Accordingly, the defendants' motion for Rule 11 sanctions will be GRANTED with respect to the defense costs of litigation of this fraudulent transfer claim once that discredited claim was restated by plaintiff's counsel in the second amended complaint.

Having made these findings, we will prescribe the manner in which these sanctions will be calculated and assessed.

C. **The Calculation of These Sanctions Will Be Deferred Pending Resolution of the Merits of This Case**.

In considering the path we should follow in calculating and assessing these sanctions, we begin with a familiar proposition: At its best, litigation should be a process of creative conflict, which reveals truth, and leads to justice. However, on occasion this clash of ideas can devolve into a more parochial and venal form of conflict. When this occurs, sanctions practice frequently follows. Thus, on occasion, the enmity between counsel which inspires sanctions litigation can threaten to overshadow the ultimate goal of all federal litigation which is "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

We can ensure that the just, speedy, and inexpensive determination of the merits of Mrs. Hamill's claims, and the defenses to those claims, remains the highest priority in this lawsuit through the exercise of our discretion. We retain the broad discretion to "adopt a scheduling approach to these sanctions issues that will compel counsels' attention to first principles-resolution of the merits of this dispute between the parties." Breslin v. Dickinson Twp., No. 1:09-CV-1396, 2012 WL 715258, at *11 (M.D. Pa. Mar. 5, 2012). We can achieve this goal by directing that further litigation of the amount of any sanctions be deferred until 30 days following the conclusion of the merits litigation in this matter. Id. Indeed, adopting this course

guarantees that we do not "place the sanctions cart before the merits horse." <u>Abney v. Younker</u>, No. 1:13-CV-1418, 2016 WL 1535860, at *4 (M.D. Pa. Apr. 15, 2016).[1]

This is the path we will follow in the instant case. However, even as we set a schedule for the litigation of the appropriate amount of any sanctions following the completion of merits litigation, we commend to all counsel the following guidance regarding how parties should proceed in calculating and assessing attorneys' fees:

> "The starting point for a determination of attorney's fees, the lodestar calculation, is the product of the number of hours reasonably expended in responding to the frivolous paper times an hourly fee based on the prevailing market rate." <u>Doering v. Union County Bd. of Chosen Freeholders</u>, 857 F.2d 191, 195 (3d Cir.1988); <u>see also Hensley v. Eckerhart</u>, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The party seeking fees bears the burden of producing "sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered ...." <u>Knight v. Drye</u>, 2009 WL 2928899, 2009 U.S. Dist. LEXIS 82369 (M.D.Pa. Sept. 10, 2009) (quoting <u>McCutcheon v. America's Servicing Co.</u>, 560 F.3d 143, 150 (3d Cir.1990)). <u>See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (party seeking fees has the initial burden of presenting evidence that the claimed rates and time expended are reasonable).
>
> In the more familiar setting of fee-shifting awards, the Third Circuit has instructed that determining a reasonable hourly rate generally "is calculated according to the prevailing market rates in the relevant community." <u>Loughner v. Univ. of Pittsburgh</u>, 260 F.3d 173, 180 (3d Cir.2001); <u>see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc.</u>, 426 F.3d 694, 705 (3d Cir.2005) (in most cases, the relevant market rate is

---

[1] Further as a practical matter, choosing this path may have a benefit for all parties since plaintiff's counsel has suggested that he may lack the ability to pay any proposed monetary sanction; an impediment which could be relieved depending upon the outcome of the plaintiff's case.

the prevailing rate in the forum of the litigation). A court must not make a finding of reasonableness based on its own "generalized sense" of appropriateness, but instead "must rely on the record." Evans v. Port Auth. of N.Y. and N.J., 273 F.3d 346, 361 (3d Cir.2001) (quoting Smith v. City of Phila. Housing Auth., 107 F.3d 223, 225 (3d Cir.1997)). Courts are to "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir.2001); Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990). The party seeking fees "bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' ... that the requested hourly rates meet this standard." Washington v. Philadelphia Cty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir.1996) (citing Blum v. Stenson, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). The petitioning attorney's usual billing rate is typically a starting point in this calculation, but it is not dispositive. Loughner, 260 F.3d at 180. Although the petitioning party has the burden of demonstrating that the requested hourly rates are reasonable, where the party opposing the asserted rate "has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward." Ridley v. Costco Wholesale Corp., 217 Fed.Appx. 130 (3d Cir.2007) (quoting Washington, 89 F.3d at 1036); see also Black Grievance Committee v. Philadelphia Elec. Co., 802 F.2d 648, 652–53 (district court not free to disregard attorney's affidavit regarding reasonableness of hourly rate where the opposing party "filed no affidavit and offered no testimony contesting the accuracy of [the attorney's] statement with respect to charges by comparable practitioners").

With respect to calculating the number of hours reasonably expended, the court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.' " Public Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir.1995) (internal citation omitted); see also Dellarciprete, 892 F.2d at 1183 ("The district court should exclude hours that are not reasonably calculated."). In general, hours are not considered to have been reasonably expended "if they are excessive, redundant, or otherwise unnecessary." Id. The court may

permissibly deduct hours from the fee award if the attorney inadequately documents the hours claimed. Id.

Once the petitioning party has made the preliminary showing described above, "the resulting product is presumed to be the reasonable fee to which counsel is entitled." Id. The burden then shifts to the party opposing the claimed fees by making specific objections to the proposed fee by way of an affidavit or brief. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990). Upon consideration of the opposing party's objections, the court enjoys substantial discretion to adjust the lodestar and ultimate fee downward. Id.

In addition to the traditional lodestar analysis, we note that in the context of Rule 11 sanctions—unlike in the more familiar fee-shifting context where a party is entitled to reasonable attorneys' fees and costs as a prevailing party—the court may only impose a sanction that represents "the minimum that will serve to adequately deter the undesirable behavior" that precipitated the sanction. Doering, 857 F.2d at 194 (citation omitted).

Lease v. Fishel, 712 F. Supp. 2d 359, 378–79 (M.D. Pa. 2010), aff'd, No. 1:07-CV-0003, 2010 WL 4318833 (M.D. Pa. Oct. 22, 2010). Consistent with the deterrent rationale behind Rule 11 sanctions it is also well-settled that: "One particularly important consideration in determining an appropriate fee charged for Rule 11 violations is the violating party's ability to pay." Id. at 379.

An appropriate order follows.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: November 8, 2024

28