IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEANNE M. HAMILL,** | : | Civ. No. 3:20-CV-231 |
| **Individually and as Administratrix and** | : | |
| **Administratrix ad Prosequendum of the** | : | |
| **Estate of Eugene Hamill, Deceased,** | : | |
| | : | (Judge Mehalchick) |
| | : | |
| **Plaintiff,** | : | |
| | : | (Magistrate Judge Carlson) |
| v. | : | |
| | : | |
| **TWIN CEDARS SENIOR LIVING, LLC,** | : | |
| **d/b/a and a/k/a Twin Cedars** | : | |
| **Senior Living, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION**

**I.      Statement of Facts and of the Case**

This litigation involves grave allegations and merits issues of singular importance to the parties. This is a personal injury, wrongful death, and survival action brought by Jeanne Hamill as administratrix of the estate of her late husband, Eugene Hamill. Jeanne Hamill alleges that the defendants, who operated a care facility, engaged in a pattern of neglect towards Eugene which ultimately led to his death.

1

In our view, all counsel owe it to their clients to focus their skills and attention on the merits of this case, which is of vital concern to all. Regrettably, however, on occasion the parties' pursuit of sanctions has distracted from resolution of the underlying merits of the plaintiff's claims, claims that involve a fatality. We have previously decried the degree to which these sanctions disputes have delayed the progress of this case and admonished the parties to focus their time and talents on resolution of the merits of this case.

In an effort to return the parties' attention to first principles—the merits of this case—we have entered a series of rulings on sanctions issues. Most recently, we ruled upon a pair of defense sanctions motions: a motion for imposition of attorneys' fees as a sanction for discovery defaults, (Doc. 187), and a separate Rule 11 sanctions motion based upon what the defendants characterize as the pursuit of a frivolous fraudulent transfer claim by the plaintiff. (Doc. 262). In addressing these motions, we examined the persistent efforts of the plaintiff to extend liability in this case to parties who had no involvement in the events that allegedly resulted in Eugene Hamill's injuries and death through various fraudulent transfer claims, claims Hamill pursued repeatedly throughout this litigation, but with a dearth of proof, even after she had been informed by the Court that the claims were bereft of factual or legal merit.

We also considered what we have previously found to be a series of grave discovery delinquencies by the plaintiff in the course of this litigation, involving neglect and failure to comply with court orders in a timely fashion; unexcused failures to produce evidence; and an inexplicable and potentially prejudicial disregard of expert witness disclosure deadlines. We considered these discovery defaults against the context of our prior ruling that: "These are grave errors that in our view warrant some sanctions. However, we recognize that this case involves claims arising out of a fatality, and we do not believe that the lawyer's error should redound to the detriment of the client." (Doc. 182, at 1).

After reviewing in detail the history of litigation missteps by plaintiff's counsel, we concluded that some sanctions were appropriate here. See Hamill v. Twin Cedars Senior Living, LLC, No. 3:20-CV-231, 2024 WL 4729760, at *12 (M.D. Pa. Nov. 8, 2024). See also Docs. 278, 279. However, our November 8, 2024, sanctions opinion was narrowly tailored and was expressly designed to assist the parties in returning to the prompt and fair resolution of the merits of this case. Moreover, in many ways our sanctions ruling was very favorable to the plaintiff. In that ruling we reaffirmed that we would not impose claim or evidence preclusive sanctions upon the plaintiff. Id. We also narrowly tailored the monetary sanctions to the specific violations of Rules 11 and 37 which we found had taken place in the course of the litigation. At plaintiff's request, we then deferred the assessment of

3

monetary sanctions pending the resolution of the merits of this longstanding litigation and prescribed a process for the litigation of these sanctions which provided plaintiff's counsel a full and fair opportunity to address the proper scope of any monetary sanction.

Dissatisfied with this ruling, which incorporated many features requested by plaintiff's counsel, the plaintiff filed a motion to reconsider this sanctions decision. (Doc. 286). This motion is fully briefed and is, therefore, ripe for resolution.

For the reasons set forth below, the motion is denied.

### III.   Discussion

#### A. Motion to Reconsider: Standard of Review

The legal standards that govern motions to reconsider are both clear, and clearly compelling. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Typically, such a motion should only be granted in three, narrowly defined circumstances, where there is either : "(1) [an] intervening change in controlling law, (2) availability of new evidence not previously available, or (3) need to correct a clear error of law or prevent manifest injustice". Dodge v. Susquehanna Univ., 796 F.Supp. 829, 830 (M.D. Pa. 1992 ). As the United States Court of Appeals for the Third Circuit has aptly observed:

> "The purpose of a motion for reconsideration ... is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café, 176 F.3d at 677 (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [previously ruled]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Id. (citation omitted).

Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010).

Thus, it is well-settled that a mere disagreement with the court does not translate into the type of clear error of law which justifies reconsideration of a ruling. Dodge, 796 F.Supp. at 830. Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995). Moreover, it is evident that a motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the court. Dodge, 796 F.Supp. at 830. Rather, such a motion is appropriate only where the court has misunderstood a party or where there has been a significant change in law or facts since the court originally ruled on that issue. See Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

It is against these legal guideposts that we examine the current motion to reconsider.

**B. The Motion to Reconsider Will Be Denied.**

In this case, Hamill does not argue that reconsideration of our prior decision is necessary because of some intervening change in the law. Instead, her motion seems to turn on notions that there is either new evidence that was not previously available or the need to prevent manifest injustice.

We disagree.

Turning first to the defendants' motion for attorneys' fees as a discovery sanction, it is beyond dispute that decisions regarding Rule 37 discovery sanction motions are "committed to the sound discretion of the district court." Cartagena v. Serv. Source, Inc., 328 F.R.D. 139, 142 (M.D. Pa. 2018) (quoting DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974)).

In the instant case, we have already exercised that discretion in a number of ways which are highly favorable to Hamill. We rebuffed any suggestion that the undisputed discovery defaults warranted preclusion of evidence or claims, and at the plaintiff's request deferred sanctions assessment pending resolution of the merits in this case.

Despite these highly favorable aspects of our prior rulings, Hamill's counsel apparently seeks to be relieved of any monetary sanctions for his discovery failures.

This we cannot do. Indeed, following this course would ignore the plain language of Rule 37, which provides that:

> "If a party.... fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders," and specifies an array of available sanctions. Fed. R. Civ. P. 37(b)(2)(A). In addition to these specifically identified sanctions, the rule also provides that: "Instead of or in addition to these sanctions, the court *must* require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3)(emphasis added). Likewise Rule 37(a)(5) calls for payment of attorney's fees relating to compelled discovery practice, and provides that the party whose non-disclosure or incomplete disclosure required litigation of a motion to compel:
>
>> [M]ust ... pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>>
>> **(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>> **(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or
>> **(iii)** other circumstances make an award of expenses unjust.
>
> Fed. R. Civ. P. 37(a)(5).
>
> Thus, by its terms Rule 37 seems to call for the imposition of attorney's fees in discovery litigation, unless the position of the party who failed to make discovery was "substantially justified." Therefore, as a threshold matter in ruling on this sanctions matter, we must make a determination regarding: (1) whether there was a failure of discovery

7

and (2) whether the conduct of a party that is alleged to have failed in some discovery obligation was substantially justified.

Id. at 143.

In this case, following the dictates of Rule 37, we previously concluded that:

> [I]t is clear that there was a multi-facetted, culpable failure to make discovery in this case. Indeed, we have previously found that:
>
>> [T]he plaintiff has defaulted on her discovery obligations by providing inadequate responses to some discovery in November of 2020, by failing to timely schedule depositions in March of 2022, and by failing to make timely disclosures of expert witnesses by the June 2022 deadline prescribed by the court. (Doc. 142, at 2). While plaintiff's counsel has some disputes regarding deposition scheduling and the sufficiency of November 2020 discovery disclosures, with respect to the failure to make timely disclosure of expert witnesses, it seems undisputed that plaintiff's counsel did not comply with our scheduling order.
>
> Hamill, 2022 WL 16841289, at *1–2. Further, this failure to provide timely disclosures was prejudicial to all parties in that it led to needless delay and expense as well as potentially prejudicing the presentation of these claims.

Hamill v. Twin Cedars Senior Living, LLC, No. 3:20-CV-231, 2024 WL 4729760, at *9 (M.D. Pa. Nov. 8, 2024). In this motion to reconsider, Hamill's counsel does not seriously dispute these factual findings regarding his own discovery delinquencies. Nor does he assert that he was substantially justified in failing to comply with discovery deadlines. Instead, this motion appears to rest upon an

8

exercise in whataboutism, an attempt to divert attention from these undisputed discovery defaults by Hamill's attorney to defense counsel's alleged failure to more fully consult with the plaintiff's attorney before seeking sanctions. Specifically, Hamill's counsel alleges that the sanctions motion docketed at Docs. 142-1 through 142-17 contained no certification that counsel attempted to resolve these discovery disputes. (Doc. 286, at 8). This argument, which focuses on Docs. 142-1 through 142-17, is transparently disingenuous because it ignores the express language of the statement filed by counsel on the very next page of this defense sanctions motion, (Doc. 142-18), which contained the very certification that Hamill's counsel alleges did not exist and plainly stated that defense counsel:

> [H]ereby certify that on eight (8) separate occasions counsel has forwarded correspondence to counsel for plaintiff requesting that the parties work cooperatively to set dates for the depositions of the parties and counsel have in each case acknowledged the request but all efforts to secure in good faith an agreement on the requested discovery has been unavailing and requires court action.

In advancing this type of frivolous argument, the plaintiff's counsel should consider the following: When seeking to avoid sanctions for his own past improper practice, moving counsel would be well-advised to avoid this type of misleading gamesmanship.

Simply put, holding counsel accountable for these discovery defaults does not work a manifest injustice. Therefore, we will deny the motion to reconsider our prior

decision holding counsel liable under Rule 37 motion for attorneys' fees with respect to legal fees incurred directly as a result of the discovery defaults identified in our November 2022 ruling.

Likewise, Hamill's motion to reconsider our Rule 11 sanctions is also unavailing. In our prior decision we thoroughly documented Hamill's persistent efforts to pursue a fraudulent asset transfer claim which was devoid of factual or legal support. We then narrowly tailored our Rule 11 sanctions ruling, stating:

> [G]iving plaintiff's counsel the benefit of every reasonable doubt, we conclude that counsel's initial efforts to establish some form of successor liability through a fraudulent asset transfer claim can be viewed as adventuresome, though responsible, lawyering which advocates creative legal theories. However, by the time that plaintiff's counsel was called upon to file the second amended complaint in this case, Hamill's initial theories for successor liability based upon a fraudulent asset transfer had been wholly undermined both legally and factually. Therefore, before he filed this thoroughly discredited claim once again in the face of evidence rebutting the claim, counsel had a legal and ethical obligation to conduct a reasonable inquiry into the continued viability of this claim.
>
> This counsel failed to do. Thus, there is no indication that plaintiff's counsel engaged in any discovery in order to factually bolster this claim before filing the second amended complaint, and the allegations set forth in the second amended complaint were woefully inadequate to state a claim of actual fraud by the defendants. At this juncture, counsel's conduct fell far below what Rule 11 demands. And at this point counsel's actions were no longer adventuresome, though responsible, lawyering which advocates creative legal theories. Rather, counsel's behavior had devolved into the assertion of frivolous claims advanced without a reasonable basis in law or fact. Further, by this juncture, plaintiff's counsel knew better than to engage in ethically problematic behavior.

<u>Hamill v. Twin Cedars Senior Living, LLC</u>, No. 3:20-CV-231, 2024 WL 4729760, at *12 (M.D. Pa. Nov. 8, 2024).

In an effort to set aside our Rule 11 sanctions finding, Hamill's counsel now purports to rely upon new evidence which he suggests reveals that this long discredited fraudulent transfer claim had legal merit. However, these efforts are unavailing because the evidence cited by plaintiff's counsel is neither new, nor material, nor admissible.[1] Indeed, the bankruptcy of this argument is illustrated through the key new "evidence" highlighted by Hamill's counsel to support his motion to reconsider: a December 2018 Facebook posting that allegedly depicts Tamara Singer as Twin Cedars' Christmas Santa. (Doc. 286, at 7). Simply put, the suggestion that a picture of Singer dressed as Santa sufficiently proves the merits of this fraudulent transfer claim to defeat a Rule 11 sanctions ruling is risible and provides no grounds for reconsidering this decision. Therefore, this motion will be denied.[2]

---

[1] For example, counsel cites some hearsay remark allegedly made to an Uber driver as proof of the defendants' knowledge of a potential legal claim by Hamill and rely upon screenshots purporting to pages from third party websites as proof of this fraudulent transfer. However, such matters, while likely inadmissible, have long been known by counsel. Therefore, these matters simply are not new evidence. Nor do they change the quantum of proof in a way which requires us to vacate our prior decision to avoid a manifest injustice.

[2] Beyond its lack of factual merit, there is an element of intellectual incoherence to this argument. At bottom, Hamill's counsel cites this odd array of evidentiary shards

An appropriate order follows.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: December 20, 2024

---

as proof of the merits of this fraudulent transfer claim, but he does not seek to have us reconsider the dismissal of this claim. However, if this evidence was truly probative, its probative power should compel reconsideration of our merits ruling, a form of relief that counsel does not seek.